Michael NASO, Frank Naso and Zeta Products, Inc., Plaintiffs,

v.

Ki PARK, Celico International, Equity Leasing, Herbert Moelis and Microfilm Products Company, Defendants.

No. 93 Civ. 0915 (WCC).

United States District Court, S.D. New York.

April 26, 1994.

William T. Hough, Basking Ridge, NJ, for plaintiffs.

Baker & Friedman, New York City (Ben C. Friedman, of counsel), for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiffs Michael Naso, Frank Naso, and Zeta Products, Inc. ("Zeta") bring this action against defendants Ki Park, Celico International ("Celico"), Equity Leasing Corporation ("Equity"), Herbert Moelis, and Microfilm Products Company ("M.P.C.") asserting claims based on violations of the federal patent laws, the federal antitrust laws, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, in connection with the defendants' manufacture and sale of certain microfilm reels alleged to infringe plaintiffs' patents. The action is currently before the Court on defendants' motion to dismiss pursuant to Rules

12(b)(2), 12(b)(5), and 12(b)(6), Fed.R.Civ.P.[1] Specifically, all defendants move to dismiss the antitrust, RICO, and Lanham Act claims for failure to state a claim upon which relief can be granted, and defendants Ki Park and Celico move to dismiss the entire Complaint for insufficient service of process and lack of personal jurisdiction. Plaintiff's cross-motion for a default judgment against Ki Park and Celico is also before the Court.

## BACKGROUND

Plaintiff Zeta, a New Jersey corporation with its principal place of business in New Jersey, is in the business of manufacturing and selling microfilm reels. Plaintiffs Michael and Frank Naso, New Jersey residents, are President and Vice–President of Zeta, respectively.

Defendant Equity is a New York Corporation with an office in New York City. Defendant M.P.C. is a division of Equity. Defendant Herbert Moelis is President of Equity. Defendant Celico is a South Korean company located in South Korea. Defendant Ki Park is the managing director of Celico and a resident of South Korea.

Plaintiffs allege in their Complaint that Michael and Frank Naso jointly obtained two United States utility patents, numbered 4,798,352 and 4,863,111, for the invention of a microfilm-mounting reel. They claim this microfilm reel "exhibits enhanced retension [sic] of microfilm mounted ends ... effective ... against heretofore notorious undesired pulling out of mounted microfilm ..." Compl. ¶ 7. Plaintiffs allege that at some time in the past, M.P.C. purchased these reels from Zeta and resold them, but discontinued such purchases and began acquiring similar reels from a Korean manufacturer, Celico. Plaintiffs allege that the sale by M.P.C. in the United States of these reels obtained from Celico infringes the patents in suit. Plaintiffs further contend that Celico sells the reels to M.P.C. at "conspired unfair-

competition low prices," compl. ¶ 11, and that M.P.C. in turn sells the reels to American customers at "unfair price-cutting undercutting prices," compl. ¶ 13, in violation of the federal antitrust laws. Plaintiffs also allege that defendants have misrepresented the origin of the reels by making them appear to be plaintiffs' product, in violation of the Lanham Act, § 43(a), 15 U.S.C. § 1125(a). Lastly, plaintiffs claim defendants committed various RICO violations by engaging in a "scheme to fraudulently make and/or fraudulently sell counterfeit goods in violation of Plaintiff(s)'s United States patent ... through a pattern ... of racketeering activity(ies)...." Compl. ¶ 57.

## DISCUSSION

Defendants have moved this Court pursuant to Rule 12(b)(6) to dismiss the antitrust, RICO, and Lanham Act claims for failure to state a claim upon which relief can be granted. Defendants Ki Park and Celico have moved this Court to dismiss the entire Complaint pursuant to Rules 12(b)(2) and (5) for lack of personal jurisdiction and insufficiency of service of process, respectively. Plaintiffs have moved this Court for a default judgment against Ki Park and Celico. For the reasons stated below, defendants' Rule 12(b)(6) motion is granted in part and denied in part, defendants' Rules 12(b)(2) and 12(b)(5) motions are referred to a magistrate judge for further proceedings, and plaintiffs' motion for a default judgment is denied.

### A. *Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(6)*

A motion pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted tests only the sufficiency of the complaint, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and should not be granted "unless it appears beyond a doubt that the plaintiff can

---

1. Defendants have also moved to dismiss pursuant to Rule 8, Fed.R.Civ.P. Defendants contend that the Complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2) and that each averment in the Complaint is not "simple, concise and direct" as required

by Rule 8(c)(1). While we agree with defendants that the Complaint is lacking in clarity and conciseness, we decline to dismiss the entire Complaint pursuant to Rule 8 because, with substantial effort, it is possible to discern the meaning of the allegations.

prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin*, 700 F.2d 37, 40 (2d Cir.1983). A court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

### 1. The Lanham Act Claims

Although difficult to discern from plaintiffs' marginally intelligible Complaint, it appears that plaintiffs have alleged a violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a)[2], based on defendants' alleged false designation of origin due to continuing patent infringement. Specifically, plaintiffs claim that because defendants sold and continue to sell to former customers of plaintiffs microfilm reels which are identical or substantially similar to plaintiffs' reels and which infringe plaintiffs' patents, defendants have blatantly misrepresented the origin of those reels by leading the customers to believe the reels are produced by plaintiffs rather than defendants. Compl. ¶ 24. Plaintiffs do not allege that defendants mislabelled the reels or otherwise represented to customers that the reels were manufactured by plaintiffs. Rather, the alleged false designation of origin is based solely on the similarity in appearance between the reels sold by both. Although quite inartfully pleaded, it appears that plaintiffs are claiming that the design of their reels has become, in the minds of purchasers, so associated with plaintiffs that defendants' sale of reels of the same or similar appearance is likely to cause confusion as to the source of the reels in violation of § 43(a).

Defendants interpret plaintiffs' allegations to be in the nature of a claim of § 43(a) trade dress infringement. Plaintiffs respond, however, they are not relying on trade dress, but rather on the "overall identical appearance and shape and same public and same relevant market ... [and] the total impression of the package, size, shape, color, design...." Plaintiffs' Brief in Reply at 1–2. Notwithstanding plaintiffs' assertion that trade dress infringement is not at issue here, we fail to see the distinction plaintiffs are attempting to make, or any reason for such attempt. We therefore treat the allegations as sounding in § 43(a) trade dress infringement.

Section 43(a) of the Lanham Act prohibits the marketing in interstate commerce of a product which conveys a false designation of origin. In essence, § 43(a) grants to the first manufacturer of a product, in certain circumstances, an unregistered trademark in the trade dress of the product. *Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 974 (2d Cir.1987). Trade dress "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, or graphics." *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985).

To obtain § 43(a) protection, plaintiff must first prove that the trade dress of the product is either inherently distinctive or has acquired secondary meaning in the marketplace. *Two Pesos, Inc. v. Taco Cabana, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2753, 2761, 120 L.Ed.2d 615 (1992). Trade dress that is not inherently distinctive and therefore not immediately eligible for protection under the Lanham Act may nevertheless warrant protection if the dress has acquired secondary meaning, i.e., if "the purchasing public associates [the product's] design with a single producer or source rather than simply with the product itself." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d

---

**2.** 15 U.S.C. § 1125(a) provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with

another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or *another person's goods, services, or commercial activities,*

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

162, 168 (2d Cir.1991). The issues of inherent distinctiveness and secondary meaning are questions of fact. *LeSportsac*, 754 F.2d at 78.

■ Second, plaintiff must show that there is indeed a false designation of origin. This can be established by proving that the design or trade dress of the allegedly infringing product is so similar to that of the protected product that the public will likely be confused as to the product's source. *LeSportsac*, 754 F.2d at 75; *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 115 (2d Cir.1984) ("[T]he crucial issue ... is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question."). Likelihood of confusion is also a question of fact. *LeSportsac*, 754 F.2d at 79.

■ If plaintiff shows secondary meaning and likelihood of confusion, defendant may nonetheless prevail if it bears its burden of showing that the design at issue is functional, as functional features are not protected under § 43(a). *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 330 (2d Cir.1983). A functional feature is one that "is essential to the use or purpose of the article" or one that "affects the cost or quality of the article." *LeSportsac*, 754 F.2d at 76 (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2186–87 n. 10, 72 L.Ed.2d 606 (1982) and *Warner Bros.*, 724 F.2d at 331). Functionali-

ty is also a question of fact. *LeSportsac*, 754 F.2d at 78.

■ Although we seriously doubt plaintiffs' ability to prove a violation of § 43(a), it would be improper at this time to dismiss those claims because the Complaint seems to state a claim upon which relief can be granted. Specifically, plaintiffs have alleged that goods that affect interstate commerce are involved. Furthermore, they have alleged that because defendants' reels look essentially identical to theirs, and because defendant M.P.C. now sells reels made by defendant Celico to the same customers to whom it previously sold reels made by plaintiff Zeta, it is likely that these customers believe the reels they are getting from defendants are likewise manufactured by Zeta, thereby causing a likelihood of confusion as to source. The foregoing is sufficient to put defendants on notice of the nature of the claims asserted and, if proved, could support a claim of trade dress infringement under § 43(a). *See Hicks v. Casablanca Records*, 464 F.Supp. 426, 433 (S.D.N.Y.1978); *CBS Inc. v. Springboard Int'l Records*, 429 F.Supp. 563, 567 (S.D.N.Y.1976); *Institute for Scientific Information, Inc. v. Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1007 (3d Cir.1991). However, there appears to be substantial doubt as to plaintiffs' ability to prove inherent distinctiveness, secondary meaning, or nonfunctionality,[3] and a motion for summary judgment from defendants may be appropriate after further discovery has been completed.[4]

---

**3.** First, we doubt that inherent distinctiveness or secondary meaning can be shown because it appears that most microfilm reels are of similar appearance, thereby precluding the purchasing public from distinguishing among manufacturers. Reels are manufactured in three colors—white, gray, and black—and are generally of the same size and shape due to specifications set by the American National Standards Institute. Second, because the microfilm reels conform to the standards mentioned above, defendants may be able to prove functionality. *See* Moelis Reply Aff. at 1–2.

**4.** In addition to the Lanham Act claims, it is possible, though difficult to tell, that plaintiffs are alleging state law unfair competition. In their briefs in opposition to defendants' motion, plaintiffs repeatedly refer to *Hoeltke v. C.M. Kemp Mfg. Co.*, 80 F.2d 912 (4th Cir.1936). In that

case, prior to the granting of a patent, plaintiff disclosed to defendant the invention that plaintiff was in the process of patenting. Thereafter, in breach of the confidential relationship, defendant manufactured a product embodying plaintiff's invention. The court held defendant liable for the profits from its product on "the principle that equity will not permit one to unjustly enrich himself at the expense of another." *Hoeltke*, 80 F.2d at 923.

We surmise from plaintiffs' citation of this case that they believe they are entitled to equitable relief based on the allegation that defendants somehow used confidential information of plaintiffs to manufacture reels embodying plaintiffs' patented inventions. However, the Complaint does not allege facts that if proven would support such a finding. There is no allegation that plaintiffs disclosed their inventions to defendants in

### 2. The Antitrust Claims

Plaintiffs' tenth claim for relief alleges violation of Sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. §§ 1, 2, 3, and Sections 2, 3, and 7 of the Clayton Act, 15, U.S.C. §§ 13, 14, 18. *See* Compl. ¶¶ 44–54. Because we find these allegations do not state a claim upon which relief can be granted, they are dismissed.

#### a. Antitrust Injury and Sherman Act §§ 1–3

■ Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, authorize private parties to sue under the federal antitrust laws. To recover damages under § 4 or to get injunctive relief under § 16 for any violation of the Sherman Act, a plaintiff must allege "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Volvo North America Corp. v. Men's Int'l Professional Tennis Council*, 857 F.2d 55, 66 (2d Cir.1988); *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 825 F.Supp. 1153, 1159 (S.D.N.Y.1993) (J. Conner). The antitrust laws are designed to protect competition, not competitors. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977). Therefore, for a private plaintiff to recover under the Clayton Act for a violation of the Sherman Act, he must show that the injury of which he complains was caused by an act having a competition-reducing effect. *Volmar*, 825 F.Supp. at 1159.

■ Although difficult to discern from plaintiffs' Complaint, the thrust of their antitrust allegations is apparently that defendants have illegally gained market share by selling allegedly patent infringing microfilm reels to American customers at prices well below those which are charged by plaintiffs for similar reels, thereby injuring plaintiffs' business. Even if defendants' conduct was designed to drive plaintiffs out of the relevant market, however, the only injury alleged in the Complaint is injury to plaintiffs' business; there is no well-pleaded allegation that such conduct injured the competitive structure of the market. *See Volmar*, 825 F.Supp. at 1160.

■ The only allegation suggesting competition-reducing conduct is plaintiffs' assertion that defendants sell microfilm reels in the American market "at unfairly competitive foreign reduced costs and import sales prices with resulting unlawful underselling in the United States at unfairly low sales below Plaintiff(s)'s higher prices that resulting [sic] from Plaintiff(s)'s expense of research and development and promotion by the Plaintiff(s)." Compl. ¶ 65. If plaintiffs were attempting, through this allegation and others along the same lines[5], to state a claim for predatory pricing, they have failed to do so. To state a claim for predatory pricing, plaintiffs must allege that defendants' prices are below an appropriate measure of their costs. "[A]bove-cost prices that are below general market levels or the cost of a firm's competitors [do not] inflict injury to competition cognizable under the antitrust laws." *Brook Group Ltd. v. Brown & Williamson Tobacco Corp.*, —— U.S. ——, ——, 113 S.Ct. 2578, 2588, 125 L.Ed.2d 168 (1993). Here, plaintiffs do not allege that defendants are selling the reels at prices below their costs. In fact, during a conference held in chambers, plaintiffs' counsel specifically represented to the

---

confidence prior to obtaining the patents. In fact, it appears that the microfilm reels containing the patented inventions were available on the market and therefore could not have been conveyed to defendants in confidence.

Therefore, insofar as the allegations in the Complaint relate to this aspect of unfair competition, they are dismissed for failure to state a claim upon which relief can be granted.

**5.** *See* Compl. ¶ 11 ("Celico sells microfilm reels ... to MICROFILM at conspired unfair-competition low prices, and/or ... MICROFILM buys the imported infringing microfilm reels and [sic] un-

fairly low prices and undersells the imported microfilm reels relative to the United States higher cost and higher priced microfilm reels of ZETA."); Compl. ¶ 13 ("MICROFILM ... would continue to sell ... at the unfair price-cutting undercutting prices ... and continued price willfully and unlawfully slashing and undercutting sales prices ... the result of ... unfair price slashing ... is to destroy and/or substantially irreparably injure Plaintiff)s)'s [sic] United States based industry struggling through recession times of a depressed economy ...").

Court that plaintiffs could not so allege, but insisted that the mere fact that defendants' prices were lower than plaintiffs' and were causing plaintiffs to lose business was itself enough to state an antitrust violation. As we informed plaintiffs' counsel then and reiterate now, such an allegation fails to state a claim for predatory pricing in violation of the federal antitrust laws. Indeed, defendants' offering the reels for sale at prices below that which plaintiffs offer fosters rather than hinders competition. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340, 110 S.Ct. 1884, 1892, 109 L.Ed.2d 333 (1990) ("Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition. Hence, they cannot give rise to antitrust injury.").

Because plaintiffs have failed sufficiently to allege antitrust injury, they have failed to state a claim upon which relief can be granted under §§ 1, 2, and 3 of the Sherman Act. Therefore, the allegations pursuant to those sections are dismissed.[6]

### b. Clayton Act § 2

Section 2 of the Clayton Act, 15 U.S.C. § 13, prohibits a seller from discriminating among different purchasers as to the price it charges for its products. Plaintiffs have failed to state a claim upon which relief can be granted under § 2 because they have not alleged that defendants engaged in price discrimination by selling the same kind of goods cheaper to one purchaser than to another.

### c. Clayton Act § 3

Section 3 of the Clayton Act, 15 U.S.C. § 14, prohibits one from selling goods to a purchaser on the condition that the purchaser not deal in the goods of a competitor of the seller where the effect of such a condition

---

6. Nonetheless, we discuss each section in turn here because plaintiffs have also failed sufficiently to allege the other elements of each section, providing additional grounds for dismissal.

*1. Sherman Act § 1*

Section 1 of the Sherman Act prohibits contracts, combinations, and conspiracies in restraint of trade. To support a claim under this section, plaintiffs must allege (1) a contract, conspiracy, or combination, (2) which restrains trade such that the anticompetitive effects outweigh the procompetitive effects, and (3) which proximately causes injury to plaintiff. *Volvo North America Corp. v. Men's Int'l Professional Tennis Council*, 687 F.Supp. 800, 806–07 (S.D.N.Y.1988) (citations omitted). Plaintiffs have made no such allegations here.

*2. Sherman Act § 2*

Section 2 of the Sherman Act prohibits monopolization, attempted monopolization, and conspiracies to monopolize trade or commerce. To support a claim of monopolization, plaintiffs must allege "(1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Volvo*, 857 F.2d at 73. Plaintiffs have alleged neither a relevant market nor that defendants now control the market. Rather, the Complaint refers to defendants' interfering with and taking plaintiffs' customers, compl. ¶ 47, and then contains merely conclusory allegations of monopolization. These allegations are not sufficient to state a claim of monopolization.

To support a claim of conspiracy to monopolize, plaintiffs must allege "(1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize." *Volvo*, 857 F.2d at 74. Again, the Complaint contains only baldly conclusory allegations of a conspiracy to monopolize. There are no allegations of concerted action or overt acts in furtherance of the conspiracy. Therefore, the Complaint fails to state a claim for conspiracy to monopolize.

To support a claim for attempted monopolization, plaintiffs must allege "(1) anticompetitive or exclusionary conduct; (2) specific intent to monopolize; and (3) a dangerous probability that the attempt will succeed." *Volvo*, 857 F.2d at 73–74. Even if plaintiffs sufficiently alleged the first two elements, they have failed to allege a dangerous probability that defendants attempt to monopolize will succeed. Nor have they alleged facts sufficient to infer that defendants possess a significant market share from which, together with the allegation of anticompetitive conduct, we could infer a dangerous probability of success. *See Volvo*, 857 F.2d at 73–74.

*3. Sherman Act § 3*

Section 3 of the Sherman Act prohibits contracts, combinations, and conspiracies in restraint of trade in any Territory of the United States, in the District of Columbia, between the two, between a Territory and any State or the District of Columbia or a foreign nation, or between the District of Columbia and any State or foreign nation. For the reasons stated above in the section entitled "Sherman Act § 1," and because plaintiffs have not alleged that trade of any Territory or the District of Columbia is affected by defendants' actions, the Complaint fails to state a claim hereunder.

would be to lessen competition or create a monopoly. Plaintiffs have failed to state a claim upon which relief can be granted under § 3 because they have not alleged that defendants sold their microfilm reels on the condition that their purchasers not deal in plaintiffs' goods.

### d. Clayton Act § 7

Section 7 of the Clayton Act, 15 U.S.C. § 18, prohibits the acquisition of stock or assets of a corporation if the effect of such acquisition would be to lessen competition or tend to create a monopoly. Plaintiffs have failed to state a claim upon which relief can be granted under § 7 because they have not alleged that defendants acquired the stock of another corporation.

### 3. The Rico Claims

Plaintiffs' eleventh and twelfth claims for relief, compl. ¶¶ 55–80, allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Specifically, plaintiffs contend that defendants violated §§ 1962(b) and (d) by, essentially, their manufacture and sale of microfilm reels that infringe plaintiffs' patents and falsely designate origin in violation of the Lanham Act.[7] Because, as discussed below, these allegations do not state a claim upon which relief can be granted, they are dismissed.

### a. 18 U.S.C. § 1962(b)

RICO § 1962(b) proscribes the acquisition or maintenance of any interest in an enterprise through a pattern of racketeering activity.[8] "Enterprise" is defined as "any individ-

ual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" is defined, in part, as "any act which is indictable under ... [18 U.S.C. §§] ... 1341 (relating to mail fraud) ... 1343 (relating to wire fraud) ... 2314 and 2315 (relating to interstate transportation of stolen property) ..." 18 U.S.C. § 1961(1)(B). "Pattern of racketeering activity" is defined as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

Plaintiffs allege an enterprise comprised of each and/or all individual and corporate defendants. Compl. ¶ 56. They then allege that defendants perpetrated a scheme to make or sell "counterfeit" goods; we assume "counterfeit" to mean goods that infringe plaintiffs' patents and falsely designate origin. The first alleged predicate act is mail fraud due to defendants' use of the mails to transport the alleged counterfeit goods, purchase orders, and payment checks in violation of 18 U.S.C. § 1341. Compl. ¶¶ 60, 61. The second alleged predicate act is transportation and receipt of stolen property due to defendants' shipping and receiving the alleged counterfeit goods in violation of 18 U.S.C. §§ 2314 and 2315. Compl. ¶¶ 60, 62.

We discuss both of these predicate acts in turn and find that plaintiffs have failed to state a claim for either.

#### 1) Mail Fraud

▮▮▮▮ Rule 9(b), Fed.R.Civ.P., provides in pertinent part that "[i]n all averments of

---

7. We surmise the foregoing from marginally intelligible allegations such as the following: "[Defendants constitute an enterprise who perpetrated] a scheme to fraudulently make and/or fraudulently sell counterfeit goods in violation of Plaintiff(s)'s United States patent(s) rights and/or Lanham-act (Sec 43(a)/15 USC 1125a) rights, having acquired and/or maintained an interest in and/or control of enterprise(s) engaged in and/or unlawful activities which unfairly and/or unlawfully adversely affect interstate and/or foreign commerce ... through a pattern inclusive of and/or by Defendant(s), of racketeering activity(ies) in the nature of a sheme [sic] and/or Defendant(s) has/have engaged in fraudulent conduct of and/or participation in fraudulent scheme-activities of the affairs of such said enterprise(s) and/or scheme through a pattern of unlawful and/or racketeering activity(ies)." Compl. ¶¶ 56, 57.

8. Although plaintiffs assert violations of § 1962(b), we believe 1962(c) may be the more appropriate section under which plaintiffs should complain. However, we do not reach this issue because, as discussed *infra*, plaintiffs have failed to state a claim for relief under any section of RICO because they have not sufficiently alleged any predicate act.

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." With respect to mail fraud, plaintiffs must allege with particularity the "contents of the communications, who was involved, where and when they took place, and ... why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993); *Browning Ave. Realty Corp. v. Rosenshein*, 142 F.R.D. 85, 89 (S.D.N.Y.1992) (plaintiff must allege "specifics of each purported use of the mail and wires, including the time, place, speaker, and content of the alleged fraudulent misrepresentation, as well as the manner in which the misrepresentations were fraudulent.") (citations omitted). Moreover, when more than one defendant is charged with fraud, plaintiffs must specify each defendant's alleged participation in the fraud. *Browning Ave. Realty Corp. v. Rosenshein*, 774 F.Supp. 129, 138 (S.D.N.Y. 1991). Plaintiffs conclusorily allege the use of the mails as follows:

> The manufacture and/or transport into the United States through the foreign-United States commerce and/or United States inter-state commerce in activities of making and mailing and being involve [sic] in or with the purchase orders, the purchasing and/or selling and/or shipping of and invoicing for illegal and/or counterfeit goods ... inclusive of mail fraud ...

> Defendants [sic] manufacture and/or transporting and/or selling of and/or shipping of and/or receiving of shipment(s) of counterfeit goods ... constitute(s) mail fraud committed by each and all defendants.

Compl. ¶¶ 60, 61. Such allegations are insufficient to plead the predicate acts of mail fraud; they do not indicate time, speaker, or content of the mailings with any specificity, nor do they indicate which defendants participated in which alleged fraud. *See Adler v. Berg Harmon Associates*, 790 F.Supp. 1222, 1233 (S.D.N.Y.1992) (J. Conner).

■■■ More serious than plaintiffs' failure to plead mail fraud with the requisite specificity, however, is their failure to state a claim for mail fraud at all. To state a claim for mail fraud, plaintiffs must plead (1) a scheme to defraud, (2) involving money or property, and (3) use of the mails to further that scheme. *Volmar Distributors, Inc. v. The New York Post Co., Inc.*, 825 F.Supp. 1153, 1162 (S.D.N.Y.1993) (J. Conner) (citations omitted).

■■■ To establish a scheme to defraud, an element of deception must be present. *Id.* at 1162 (citing *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir.1992)); *see also Kehr Packages, Inc. v. Fidelcor., Inc.*, 926 F.2d 1406, 1415 (3d Cir.1991) ("[T]he scheme need not involve affirmative misrepresentation ... but the statutory term "defraud" usually signifies 'the deprivation of something of value by trick, deceit, chicane or overreaching.'") (quoting *McNally v. U.S.*, 483 U.S. 350, 358, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) (citations omitted)); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 ("[T]he scheme must be intended to deceive another."); *Spiegel v. Continental Illinois Nat. Bank*, 790 F.2d 638, 646 (7th Cir. 1986) (the scheme "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension."). The element of deception requirement can be satisfied if the mailing itself contains misrepresentations or omissions, or if the mailing furthers some other deception. *McLaughlin*, 962 F.2d at 193; *see also Schmuck v. U.S.*, 489 U.S. 705, 715, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989) (although the mailing itself need not contain fraudulent misrepresentations, it must further the fraudulent scheme).

Here, plaintiffs have not adequately alleged a scheme to defraud because they have not alleged any element of deception. While plaintiffs have alleged patent infringement and false designation of origin, they have not alleged any misrepresentation or omission or any plan to fraudulently deprive plaintiffs of their property. It is true that the alleged patent infringement may harm plaintiffs and deprive them of their exclusive right to market the microfilm reels at issue; however, such patent infringement is not fraud because it contains no deceptive element. There are no allegations that defendants represented to customers that their reels did not infringe valid patent or trademark rights of

plaintiffs. Nor is there any allegation that the purchasers of the reels sold by defendants were deceived to their detriment, that is, that they preferred reels made by plaintiffs and were deceived into accepting inferior reels made by someone else. *See Ford Motor Co. v. B & H Supply, Inc.,* 646 F.Supp. 975, 1001, n. 36 (D.Minn.1986) (plaintiffs failed to establish mail fraud, and hence racketeering activity, where no evidence was produced that defendants fraudulently marketed and sold copyright and trademark infringing automobile parts as genuine Ford parts; i.e., marketing and sales of infringing goods through use of the mails and wires is not in itself mail fraud without actual misrepresentation or omission); *Cf. Shonac Corp. v. AMKO Int'l, Inc.,* 763 F.Supp. 919, 940 (S.D.Ohio 1991) (plaintiff failed to establish scheme to defraud where exporter defendant neither made nor was aware of misrepresentations made by purchasing agent defendant that goods did not infringe trademark owner's rights). Nor are there allegations that defendants somehow perpetrated a fraud on the Patent and Trademark Office by, for example, obtaining its own patent through material false representations or non-disclosures.

In short, plaintiffs have failed to allege mail fraud as a predicate act for the RICO violation because they fail not only to plead mail fraud with particularity but also to allege the required element of deception.

### 2) Transportation and Receipt of Stolen Property

■■■■ Plaintiffs allege, as a second predicate act, that defendants transported and/or received counterfeit goods in violation of 18 U.S.C. §§ 2314 and 2315. To violate these sections, defendants must have knowingly transported in interstate commerce, or received, goods, wares, or merchandise knowing the same to have been stolen, converted, or taken by fraud. Microfilm reels that infringe patents are not stolen, converted or fraudulently-taken goods within the meaning of either of these sections. *See*

*Dowling v. U.S.,* 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) (interstate transportation of bootleg phonorecords that infringe composition owners' copyrights does not violate § 2314 because the goods are not stolen, converted, or taken by fraud within the meaning of the statute). Therefore, plaintiffs have failed to allege transportation or receipt of stolen property as a predicate act for the RICO violation.

In sum, plaintiffs have failed to state a claim for either mail fraud in violation of 18 U.S.C. § 1341 or transportation or receipt of stolen property in violation of 18 U.S.C. §§ 2314, 2315. Therefore, they have not adequately alleged "racketeering activity" under RICO. Consequently, plaintiffs RICO allegations must be dismissed for failure to state a claim upon which relief can be granted.[9]

### b. 18 U.S.C. § 1962(d)

■■■■ RICO § 1962(d) proscribes conspiring to violate subsections (a), (b), or (c) of § 1962. The core of a civil RICO conspiracy is an agreement to commit predicate acts. Therefore, the Complaint must allege, at a minimum, an agreement among all defendants to commit the two requisite predicate acts. *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990). Here, plaintiffs have failed to plead any predicate act much less a conspiracy to commit predicate acts. The Complaint simply does not make specific factual allegations from which we can conclude that defendants consciously agreed to commit predicate acts with knowledge of the scope of the enterprise and intent to further its affairs. *See Morin v. Trupin,* 711 F.Supp. 97, 111 (S.D.N.Y.1989); *Adler v. Berg Harmon Associates,* 790 F.Supp. 1222, 1234 (S.D.N.Y.1992) (J. Conner) (§ 1962(d) allegations dismissed where plaintiffs made "no factual allegations supporting an inference that the various defendants consciously agreed to become part of a RICO conspiracy"). Consequently, the § 1962(d) allegations are dismissed.

9. We note that there may be other grounds for dismissal of plaintiffs' RICO allegations. Specifically, we question whether plaintiffs have adequately alleged a "pattern" of racketeering activity. However, we need not reach the issue here because the RICO allegations are dismissed on other grounds.

### B. Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(2) and (5)

Defendants have moved to dismiss the entire Complaint against the non-resident alien defendants Ki Park and Celico for insufficient service of process and lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(5) and (2), respectively. These motions are referred to a magistrate judge for further proceedings.

### C. Motion for a Default Judgment Against Ki Park and Celico

Plaintiffs have cross-moved for a default judgment against Ki Park and Celico for failure to file an answer or a motion to dismiss within the time permitted by the Federal Rules. Plaintiffs' arguments in support of this motion are totally without merit and do not warrant the time it would take the Court to discuss them. Suffice it to say that timely motions to dismiss have been filed by attorney Ben Friedman on behalf of both Ki Park and Celico.

### D. Motion for Sanctions Pursuant to Fed. R.Civ.P. 11

Both plaintiffs and defendants have moved for sanctions pursuant to Rule 11. Plaintiffs' motion is denied because defendants' arguments do not even approach frivolousness. Defendants' motion is also denied because, although many of plaintiffs' arguments and allegations fail, they are neither frivolous nor filed for any improper purpose. However, we caution plaintiffs not to attempt to continue to assert claims that have been dismissed if amended pleadings will not substantially cure the deficiencies described herein. Defendants' next motion for Rule 11 sanctions will have a greater chance of success.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for failure to state a claim upon which relief can be granted is granted in part and denied in part, plaintiffs' motion for a default judgment against Ki Park and Celico is denied, and defendants' motion to dismiss for insufficiency of service of process and lack of personal jurisdiction is referred to a magistrate judge for further proceedings.

SO ORDERED.