**Fred LORENTZEN, Plaintiff,**

v.

**W. Robert CURTIS, Esq. and Curtis & Reiss–Curtis, P.C., Defendants.**

**W. Robert CURTIS, Esq. and Curtis & Reiss–Curtis, P.C., Third–Party Plaintiffs,**

v.

**The HOME INSURANCE COMPANY; Risk Enterprise Management Limited; Vincent Vitiello, Esq.; Frederick L. Miller, Esq.; Ronald F. Barta, Esq.; Conrad Cyriax, Esq.; Schiavetti, Geisler, Corgan, Soscia, DeVito, Gabriele & Nicholson; Richard Baker, Esq.; and John Does 1–40; Third–Party Defendants.**

**No. 97 CIV. 6895 BDP.**

United States District Court, S.D. New York.

Aug. 27, 1998.

324

Desiree de Moya, Nanuet, NY, for Plaintiff.

Douglas Capuder, Capuder & Arnoff, P.C., New York, NY, for Defendants.

W. Robert Curtis, Curtis & Riess–Curtis, P.C., New York, NY, for Third–Party Plaintiffs.

Michael Lesch, LeBoeuf, Lamb, Greene & Macrae, New York, NY, for Third–Party Defendants Home Ins. Co., Risk Enterprise.

· Neil W. Silberblatt, Jones Hirsch Bonnors & Bull,P.C., White Plains, NY, for Defendants.

John J. Corgan, Schiavetti, Geisler, Corgan, Soscia, Devito, Gabriele and Nicholson, White Plains, NY, for Third–Party Defendant Schiavetti, et al.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Third-party plaintiffs, W. Robert Curtis, Esq. and his law firm, Curtis & Riess–Curtis, P.C. (collectively, "Curtis"), commenced this action against Third-party defendants The Home Insurance Company ("Home"); Risk Enterprise Management Limited ("REM"); Vincent Vitiello, Esq.; Frederick L. Miller, Esq.; Ronald F. Barta, Esq.; Conrad Cyriax, Esq.; Schiavetti, Geisler, Corgan, Soscia, DeVito, Gabriele & Nicholson; Richard Baker, Esq.; and John Does 1–40 asserting violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1962(c), common law fraud, and seeking indemnification and contribution.

Third-party defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441, on the basis that the third-party complaint alleged RICO violations under 18 U.S.C. § 1961 *et seq.* Third-party defendants now move pursuant to Rule 12(b) Fed. R.Civ.P. to dismiss Curtis' amended third party complaint, and for sanctions. *See* Fed. R.Civ.P. 11. In addition, Fred K. Lorentzen, the first-party plaintiff in this action, moves to remand, or in the alternative, to sever and remand the original action from that now pending in federal court. For the reasons that follow, third-party defendants' motion to dismiss Curtis' RICO claim is granted, and their motion for sanctions is denied. The remaining claims are remanded to state court pursuant to 28 U.S.C. § 1441.

## BACKGROUND

In deciding a motion pursuant to Rule 12(b), the court is, of course, obligated to construe the pleadings in the plaintiff's favor. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993); *Bankers Trust Co. v.*

*Rhoades,* 859 F.2d 1096, 1098 (2d Cir.1988); *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). The following facts are accordingly construed.

Curtis & Riess–Curtis, P.C. is a New York law firm that exclusively represents clients who have been injured by attorneys. W. Robert Curtis, Esq. contends that his firm has been the target of the unpermitted practices and fraudulent schemes of Home, an insurance company that wrote professional liability insurance contracts for attorneys during the relevant time period, and REM, a claims adjusting firm that has been retained by Home to close out existing claims.

Defendants John Does 1–10 are the claims adjusters, their supervisors, and managers employed by Home, and include Vincent Vitiello, Esq.; Frederick L. Miller, Esq.; Ronald F. Barta, Esq.; and Conrad Cyriax, Esq. Curtis alleges that the claims adjusters select defense counsel for its insureds from a panel of law firms concentrating in legal malpractice defense. Defendants John Does 11–20 are the law firms selected by Home/REM and include the law firm of Schiavetti, Geisler, Corgan, Soscia, DeVito, Gabriele & Nicholson, among others. John Does 21–30 are the attorneys employed by the law firms and include Richard Baker, Esq. John Does 31–40 are claims adjusters, their supervisors, and managers employed by REM, and include Frederick L. Miller, Esq.; Ronald F. Barta, Esq.; and Conrad Cyriax, Esq.

Underlying this lawsuit is a legal malpractice action brought by the plaintiff, Fred Lorentzen, and his brother, Krist, against their former attorneys, W. Robert Curtis and his law firm, Curtis & Riess–Curtis, P.C. Curtis originally represented Lorentzen in a legal malpractice action brought against Andrew DePodwin, Esq. ("*Lorentzen I*"). Home/REM had insured DePodwin and defended him against Lorentzen's lawsuit. Curtis contends that although Home/REM learned early in the litigation that *Lorentzen I* could likely be settled for $50,000 and that Lorentzen's claim for liability was strong, Home/REM took a "no pay" position in Lorentzen's lawsuit, asserting that the claim was meritless. Curtis alleges that despite the

likelihood of settlement, Home/REM spent in excess of $100,000 to destroy Lorentzen's claims, and Curtis was forced to spend over $120,000 to complete discovery and prepare the case for trial. When Lorentzen refused to pay any further discovery costs, Curtis withdrew from the action.

David M. Bushman, Esq. became Lorentzen's new attorney. Curtis alleges that Home/REM deceived Bushman regarding its settlement position, caused Curtis & Riess–Curtis, P.C. to give up its $70,000 charging lien, and caused Lorentzen to lose $20,000 in the prosecution of his case against DePodwin. Lorentzen then sued Curtis for malpractice, asserting that Curtis had spent too much time and money prosecuting *Lorentzen I*, and wrongfully disclosed to opposing counsel that *Lorentzen I* could have been settled for $50,000, which compelled Lorentzen to compromise his case.

Curtis commenced an action against third-party defendants, contending that Home/REM financed a variety of misconduct designed to defeat malpractice claims brought against its insureds and in violation of RICO. As previously noted, third-party defendants removed the action to this Court. Specifically, Curtis' Amended Third–Party Complaint alleges that Home/REM takes a position of "resist" or "no pay" on most, if not all, claims; that Home/REM destroys the physical evidence of its insured's wrongs by tampering with the case file; that Home/REM refuses to give discovery as required by the rules of civil procedure; that Home/REM refuses to produce required insurance information; that Home/REM refuses to produce defendants for depositions and engages in misconduct during depositions. Curtis also alleges that Home/REM coaches false testimony from non-party witnesses and influences their testimony; that Home/REM drafts affidavits containing perjury; that Home/REM creates false evidence and tampers with evidence; that Home/REM brings frivolous and unnecessary motions and requires excessive motion practice for economic purposes. Finally, Curtis alleges that Home/REM makes misrepresentations to the court and opposing counsel; that Home/REM misrepresents the law and the facts to the court;

that Home/REM disobeys court orders; and that Home/REM engages in unfair and dishonest settlement practices. Curtis also seeks recovery from third-party defendants for common law fraud and seeks indemnification and contribution.

With respect to his RICO claim, Curtis seeks treble damages, interest, and attorneys' fees and costs, contending that he was damaged by 1) being required to invest $70,000 in Lorentzen's suit against DePodwin "to save it from destruction" and having its $70,000 charging lien destroyed; 2) losing time worth $50,000 to respond to unnecessary litigation and the deceptive settlement tactics financed by Home/REM in *Lorentzen I;* 3) losing time worth more than $25,000 to respond to the improper adjusting of its coverage by Home/REM through Frederick L. Miller, Esq.; 4) losing time worth more than $65,000 to defend itself in this lawsuit; and 5) paying excessive premiums likely to exceed $300,000 because of claims financed or created by Home/REM. In addition, Curtis seeks damages exceeding $510,000, plus $3,000,000 in punitive damages, for his common law fraud claim, and seeks indemnification and contribution from the third-party defendants should Lorentzen prevail against Curtis in this case.

## DISCUSSION

Curtis asserts that the third-party defendants' actions violate 18 U.S.C. § 1962(c), a provision of RICO that provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"Racketeering activity" includes any act indictable under the mail fraud statute. *See* 18 U.S.C. § 1961(1)(B), 18 U.S.C. § 1341.

A. *Standing and Reliance*

■ 18 U.S.C. § 1964(c) provides for a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." Thus, "RICO

provides a civil remedy only to those persons injured 'by reason of' the defendant's predicate acts." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994).

■ To show that an injury occurred "by reason of" defendant's actions, a plaintiff "must allege 'that the defendant's violations were a proximate cause of the plaintiff's injury, i.e., that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." ' *Id.*, quoting *Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., L.P.*, 985 F.2d 102, 104 (2d Cir.1993). A plaintiff must therefore show not only that the defendant's alleged RICO violation was the "but-for" or cause-in-fact of his injury, but also that the alleged violation was the legal or proximate cause. *Id.* A RICO violation proximately causes an injury if the violation is "a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23–24 (2d Cir.1990).

■ With respect to RICO predicate acts of mail fraud, to establish the required causal connection between the prohibited conduct and the plaintiff's injury, the plaintiff must adequately allege reliance on the defendant's misrepresentations. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 368 (2d Cir.1992) (citing *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1311 (2d Cir.1990)); *see also In re Sumitomo Copper Litigation*, 995 F.Supp. 451, 458 (S.D.N.Y.1998); *DiFiore v. DiLorenzo*, No. 91 CV 4209, 1997 WL 722697, *6 (E.D.N.Y. Sept. 19, 1997); *Curatola v. Ruvolo*, 949 F.Supp. 223, 225 (S.D.N.Y.1997). While Curtis contends that the party deceived by a defendant's misstatements does not have to be the same party that relied on and was injured by the misstatements, he concedes that there must be reliance on a deception.

■ In his complaint, however, Curtis sets forth no allegations of reliance with respect to his mail fraud allegations. First, Curtis fails to allege that he was either deceived or relied on the alleged misstatements of Home/

REM. Indeed, the majority of Curtis' mail fraud allegations concern alleged misstatements of facts within the knowledge of Curtis and regarding the conduct of Curtis and his law firm—as such, Curtis could hardly have relied on these allegations. These allegations pertain to the underlying malpractice action between Lorentzen and DePodwin, and include the following: a letter from Schiavetti, Geisler to Curtis dated July 27, 1993, "creating false evidence as to an affidavit not having been received when it was not due"; an August 27, 1993 letter to Curtis "falsely stating that plaintiff had not provided a response to defendant's discovery requests or produced certain documents that had been requested"; September 13 and 15, 1993 letters "creating false evidence that Curtis & Riess–Curtis, P.C. had not produced documents it had in fact produced"; a December 2, 1994 letter that accused Curtis & Riess–Curtis, P.C. of "misstatement, deception, baseless innuendo, shameless conduct, misplaced inferences, fabricated issues, bald assertions, unwarranted requests, and coercive tactics"; and a December 21, 1994 letter "falsely stating that no discussion had occurred identifying $50,000 as a settlement amount early in the litigation." Curtis does not—and cannot—assert his own reliance on the alleged misstatements contained in these letters, as he would have known of the statements' falsity immediately upon receipt of the letters and thus could not have relied upon them.

Curtis also makes a number of mail fraud allegations relating to Home/REM's conduct in this lawsuit. These assertions pertain to Home/REM's alleged misrepresentations with respect to its position on the case. For example, Curtis complains of Home/REM having assigned to defend Curtis a law firm a day's drive away from Curtis' office; letters indicating that REM was trying to provide a good defense to Curtis when in fact it was trying to put Curtis' firm out of business; false statements that Home and REM wanted to settle the case when in fact there was a "no pay" position on the case; a letter stating that there was no conflict of interest between Home/REM and Curtis and that Curtis was therefore not entitled to independent counsel under the law; and a letter

from Frederick K. Miller, Esq., stating that he was unaware of any problems related to document reproduction when he had directed that the Curtis file in David Bushman's possession not be copied despite a court order to have it copied. The complaint, however, contains no allegations of reliance with respect to these mail fraud contentions.

A third group of mail fraud allegations concerns alleged discovery abuses by Schiavetti, Geisler. In his complaint, Curtis states that in August 1993, "the insured's underlying case file was culled and shuffled, and then mailed to Curtis & Riess–Curtis, P.C. in a condition rendering it useless." Curtis also alleges that a December 13, 1993 affirmation of Andrew DePodwin, Esq. falsely stated that all documents had been produced after a search of his office; and in August 1994, "answers to interrogatories were served in multiple, confusing parts that rendered them useless for the examination of Mr. DePodwin at his deposition or at trial." While in his brief, Curtis claims that he relied upon these mailings to prepare for DePodwin's deposition, with respect to the shuffled case file and confusing interrogatories, Curtis asserts no deception on which he relied; and with respect to DePodwin's allegedly false statements, Curtis does not claim to have relied upon anything DePodwin said. In addition, as third-party defendants point out, "[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989). And Curtis' complaint alleges no reliance on his—or anyone else's—part on these instances of alleged misconduct.

Curtis asserts in his brief that Lorentzen's successor counsel in *Lorentzen I,* David M. Bushman, Esq. "clearly relied" on Home's misrepresentations and omissions when he settled *Lorentzen I* for $72,500. These allegations, however, do not appear either in Curtis' complaint or his RICO statement. Again, this Court will not read these statements of reliance into Curtis' complaint. Indeed, even if Bushman in fact relied upon misrepresentations by Home in settling *Lorentzen I,* the injured party would be Lorent-

zen, not Curtis, who had waived his charging lien.

Moreover, while in his brief in opposition to third-party defendants' motion to dismiss, Curtis contends that the state court in *Lorentzen I* relied on several of the defendants' misstatements, Curtis alleges no facts to show the court's reliance, other than a purely speculative statement in his brief that the "deceptive statements ... paralyzed the court with perceived credibility conflicts it could not resolve, or simply provided it false and intentionally misleading representations, designed to prevent it from reaching any of the discovery disputes on their merits." Again, however, these allegations were not contained in either Curtis' complaint or RICO statement, and this Court will not read these allegations of reliance by the court into Curtis' complaint. Moreover, even if this Court read the allegations of reliance contained in Curtis' brief into Curtis' complaint, such allegations are insufficient to withstand a motion to dismiss.

In his brief, Curtis contends that the state court in the underlying action between Lorentzen and DePodwin, relied on the following allegedly fraudulent mailings:

A July 27, 1993 letter mailed by Susan Metz, Esq., an employee of Schiavetti, Geisler, to Curtis & Riess–Curtis, P.C. creating false evidence as to an affidavit not having been received when it was not due.

An August 27, 1993 letter mailed by Susan Metz, Esq. to Curtis & Riess–Curtis, P.C. falsely stating that plaintiff had not provided a response to defendant's discovery requests or produced certain documents that had been produced.

A September 13, 1993 letter mailed by Susan Metz, Esq. to Curtis & Riess–Curtis, P.C. creating false evidence that Curtis & Riess–Curtis, P.C. had not produced documents it had in fact produced.

A September 15, 1993 letter mailed by Susan Metz, Esq. to Curtis & Riess–Curtis, P.C. creating false evidence that Curtis & Riess–Curtis, P.C. had not produced documents it had in fact produced.

In July of 1993, Schiavetti, Geisler prepared and sent to Curtis & Riess–Curtis,

P.C. and to the court an affidavit of Andrew DePodwin, Esq. containing false statements in support of a frivolous motion to dismiss the complaint for lack of jurisdiction.

As defendants point out, the first of these five items are letters written not to the state court, but to Curtis' law firm, and Curtis' complaint contains no allegation that these letters were ever filed by or relied upon by the court. While Curtis alleges in his brief that "these written communications are but a small sample of the dozens of deceptive submissions" submitted to the court as exhibits to defendants' affidavits, this allegation is not contained in Curtis' complaint or RICO statement, and is nonparticularized. As for the fifth item, Curtis contends that it is "[t]he most outrageous of over a dozen deceitful statements made to both the court and Curtis & Riess–Curtis, P.C.," but admits that it was withdrawn on the eve of its submission to the court. The court, therefore, could not have relied upon it, and Curtis' reliance—asserted only in his brief—consisted of responding to the motion. Because Curtis has failed to properly allege reliance, his mail fraud assertions must be dismissed.

█ Even assuming that Curtis had properly pleaded reliance, Curtis has failed to set forth allegations sufficient to establish standing under RICO because the damages that he alleges—a $70,000 investment in *Lorentzen I*, losing time worth more than $50,000 to respond to Home/REM-financed litigation tactics in *Lorentzen I*, losing time worth more than $25,000 to respond to improper "adjusting" of Curtis' coverage by Home/REM, losing time worth more than $65,000 to defend itself in this lawsuit, and paying excessive premiums likely to exceed $300,000 because of claims financed or created by Home/REM—are simply too far removed from the acts of mail fraud alleged.

With respect to the first group of mail fraud allegations discussed above (letters between Curtis and the law firm of Schiavetti, Geisler concerning *Lorentzen I* ), the complaint does not adequately allege how Curtis' damages were caused by those allegations. As noted above, Curtis would have known upon receiving these letters that they were false, and Curtis' complaint does not specify how any of these mailings proximately caused his damages. In addition, with respect to Curtis' mail fraud allegations relating to Home/REM's conduct in this lawsuit, the only injuries to which these alleged violations could have contributed was Curtis' loss of $65,000 worth of time to defend itself in this lawsuit and Curtis' payment of excessive insurance premiums. Again, however, Curtis fails adequately to allege the requisite specific causative link between the mail fraud alleged and the injuries claimed.

Similarly, Curtis' third group of mail fraud allegations involve alleged discovery abuses by Schiavetti, Geisler: a "false" affirmation that DePodwin had produced all documents after a search of his office; confusing answers to interrogatories; and the shuffling of DePodwin's case file before production. Even if true, none of these events is sufficiently close to Curtis' injuries to have proximately caused them. While Schiavetti, Geisler's acts may have caused Lorentzen additional time and trouble, the acts are too far removed to confer standing for the damages asserted, even for the injuries that Curtis asserts with the most direct link to third-party defendants' conduct—$50,000 worth of time spent or a $70,000 investment into the lawsuit. *See, e.g., Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 24 (2d Cir.1990) ("Although Hecht's loss of employment may have been factually caused by defendants' RICO violations, it was not a foreseeable natural consequence sufficient for proximate causation.") Finally, Curtis' assertion of damages in the form of excessive premiums "likely to exceed $300,-000" is simply too speculative to be linked to any of the allegations set forth in the complaint.

In short, because Curtis fails to adequately assert RICO reliance and causation, his RICO claim must be dismissed.

B. *Mail Fraud*

█ Third-party defendants also move to dismiss Curtis' complaint on the grounds that it fails to properly assert the elements of mail fraud. Under 18 U.S.C. § 1341, the elements of mail fraud are (1) a scheme to

defraud, (2) money or property as the object of the scheme, and (3) the use of the mails to further the scheme. *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir.1996) (citing *United States v. Miller*, 997 F.2d 1010, 1017 (2d Cir.1993)); *Naso v. Park*, 850 F.Supp. 264, 274 (S.D.N.Y.1994).

Allegations of mail fraud must be pleaded with particularity under Fed. R.Civ.P. 9(b). *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir.1992). This means that the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.* (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)). "Plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *Id.* Plaintiffs must allege the manner in which the allegedly fraudulent statement misled them, and what the defendants obtained as a consequence of the fraud. *Equitable Life Assurance Soc. of the United States v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1029 (S.D.N.Y.1985) (quoting *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167 (S.D.N.Y.1985)). "Conclusory allegations that ... conduct was fraudulent and deceptive are insufficient to satisfy particularity requirement of Fed.R.Civ.P. 9(b)." *Browning Ave. Realty Corp. v. Rosenshein*, 774 F.Supp. 129, 137 (S.D.N.Y.1991).

In addition, allegations of fraud under Rule 9(b) require the assertion of facts that give rise to a strong inference of fraudulent intent, or scienter. *See Acito v. IMC-ERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). A plaintiff may plead scienter by alleging facts establishing a motive to commit fraud and an opportunity to do so. *Id.* Where motive is not apparent, a plaintiff can plead scienter by identifying circumstances indicating conscious behavior by the defendant; in such a case, the strength of the circumstantial allegations must be correspondingly greater. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987) *overruled on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989) (en banc). In assessing a defendant's fraudulent intent, a court must assume that "the defendant is acting in his or her informed economic self-interest." *Laro, Inc. v. Chase Manhattan Bank*, 866 F.Supp. 132, 138 (S.D.N.Y.1994), *aff'd*, 60 F.3d 810 (2d Cir.1995) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir.1994)).

Curtis' allegations of mail fraud are not pleaded with sufficient particularity under Rule 9(b). First, while Curtis asserts that many of the mailings were "false," he does not specify how they were fraudulent. Curtis' complaint, for example, does not particularize how any of the mailings were calculated to, or in fact, misled Curtis, what defendants gained as a result of the fraud, or in what way the misstatements were relied upon to Curtis' detriment. Second, other than a cursory statement that the mailings were made "for the purpose of executing and attempting to execute the aforementioned scheme to defraud," Curtis does not identify the purpose of the mailings within defendants' allegedly fraudulent scheme. Such a conclusory statement cannot serve to identify the purpose of the mailings within defendants' scheme; otherwise any plaintiff could withstand a motion to dismiss simply by stating that the mailings were in furtherance of the scheme to defraud.

Third, Curtis' complaint alleges no facts sufficient for a finding of scienter. While the complaint asserts that defendants finance "a full range of unpermitted and unlawful practices which are designed to systematically deprive the victims of attorney mistakes committed by its insureds from the right to obtain compensation for their damages," and that in order to destroy a claim, Home/REM routinely "spends three to ten times the settlement value of a claim in order to destroy it," such conduct, which is hardly in the economic interest of Home/REM, is insufficient to allege scienter. Finally, while in his brief Curtis suggests that Home/REM's conduct is motivated by its "long-range goal of discouraging the filing of hundreds, if not thousands, of claims against its insureds," the factual allegations necessary to support this assertion are notably missing from Curtis'

complaint. Curtis' mail fraud allegations must be dismissed for failing to plead fraud with particularity under Fed.R.Civ.P. 9(b).

Further, allegations of mail fraud require a plaintiff to show that money or property was the object of the scheme to defraud. *Naso v. Park,* 850 F.Supp. at 274. Our Circuit has held that there is a deprivation of money or property within the meaning of the mail fraud statute "only where a schemer appropriates a benefit and there is 'a corresponding loss or injury to the victim of the fraud.'" *United States v. Brennan,* 938 F.Supp. 1111, 1127 (E.D.N.Y.1996) (quoting *United States v. Starr,* 816 F.2d 94, 101 (2d Cir.1987)). Further, the harm "must affect the very nature of the bargain itself." *Id.*

█ In this case, Curtis asserts that Home avoided paying out in the claims against its insureds in the short run and stifled such claims in the long run, a significant economic benefit to Home. This gain, Curtis contends, corresponded directly with the loss of compensation suffered by the clients of the malpractice attorneys whose claims were thwarted, and the excessive fees and costs incurred by those attorneys. The deprivation of property suffered by the victims of the scheme to defraud, Curtis argues, was the property right of the client in the compensation that the insured failed to secure for him in litigation underlying the legal malpractice claim, and its lost recovery through the malpractice litigation, as well as a property right in the contract for the payment of fees and costs between the client and his attorney.

Curtis cites *United States v. Brennan,* 938 F.Supp. 1111 (E.D.N.Y.1996), to argue that the victim of the fraud need not take money from his own pocket and place it directly into the hands of the defrauder. While Curtis is technically correct, *Brennan* concerned the allocation of liability among a number of insurers—defendants (an insurer for aviation-related risks and its president) and its victims—stemming from the crash of an airplane and resulting lawsuits. *Id.* 938 F.Supp. at 1115–16. As the insurance payout by the defendants decreased, the payments by its victims increased. *Id.* 938 F.Supp. at 1128. Thus, the defendants' alleged benefits

corresponded directly to the contemplated loss. *Id.* In this case, by contrast, Curtis alleges no such direct correspondence. The alleged short-term benefit to Home—who, Curtis somewhat inconsistently contends, spent more than the claims were worth to destroy them—did not directly depend on the amount of fees and costs incurred, or the amounts involved in the malpractice claims; the alleged long-term benefit to Home of stifling claims against its insureds was likewise not directly connected to the amounts involved in the individual malpractice claims. Curtis' complaint thus fails to properly plead money or property as the object of the alleged scheme to defraud.

## C. RICO Enterprise

In his complaint, Curtis asserts two alternative RICO enterprises. The first consists of "the insurance companies writing legal malpractice policies in the State of New York." The second is comprised of "REM and its current employees and agents." Third party defendants contend that neither of the alleged enterprises constitutes a RICO enterprise.

█ Pursuant to 18 U.S.C. § 1961(4), a RICO enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." An enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). An enterprise is proved "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* Curtis' first alternative enterprise fails because Curtis has not pleaded any facts showing evidence of an ongoing organization, or evidence that the various associates function as a continuing unit. Curtis contends that implicit in identifying an "industry" of separate insurance companies are allegations of "engaging as an informal organization in the joint conduct of writing policies and spreading risk among themselves as a unit"; however, no facts pleaded in the complaint give rise to this

understanding. Curtis' first alternative enterprise is not adequately pleaded.

 Under 18 U.S.C. § 1962(c), the RICO section under which Curtis brings his claim, "the RICO 'person' must conduct the affairs of the RICO 'enterprise' through a pattern of racketeering activity." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994). This requirement means that the person and the enterprise "must be distinct." *Id.* A corporate entity, therefore, may not comprise both the RICO person and the RICO enterprise under this section. *Id.* 30 F.3d at 344. Here, Curtis' second alternative enterprise consists of "REM and its current employees and agents" or "Home, REM and its current employees." Because a RICO plaintiff cannot allege "a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendants," *Id.*, Curtis' second enterprise fails as well. While Curtis contends in his papers that the second alternative enterprise includes the law firms retained by Home to carry out its fraudulent litigation practices, entities separate from Home/REM, Curtis' complaint asserts that "each of the John Does 1–40 were or are the participating agents and employees of REM." This Court can only read the complaint as written, and as written, John Does 1–40 are alleged to be part of REM. Curtis fails, therefore, to properly assert a RICO enterprise.

As this Court has determined that Curtis' RICO claim should be dismissed, it does not reach the parties' additional arguments.

## CONCLUSION

For the foregoing reasons, Curtis' RICO claim is dismissed. Because Curtis' federal claim has been dismissed, this Court remands this action to state court pursuant to 28 U.S.C. § 1441. Third-party defendants' motion for sanctions pursuant to Fed. R.Civ.P. 11 is denied. The Clerk of the Court is directed to transmit this file to the Supreme Court of the State of New York, County of Rockland.

**SO ORDERED.**