OAK BEVERAGES, INC., Plaintiff,

v.

TOMRA OF MASSACHUSETTS, L.L.C. a/k/a Tomra of Massachusetts, L.L.P.; Tomra of North America, Inc.; Tomra Metro; Jack Walsh; Mike Wellman; R.T. Trading; William Walters; We Can; Guy Polhemus; John Demetri; Yonkers Wholesale Beer Distributors, Inc. a/k/a Yonkers Wholesale Beer a/k/a Discount Beverage Center a/k/a Yonkers Discount Beverage; Richard McDine; John Doe Salem; Colin G. Craig; Kelly's Sober Ride Corp. a/k/a Sober Ride Redemption a/k/a Kellys Beverage a/k/a Kelly's Sober Ride Corporation; John Moglia; William Waltenberger; John Doe Look–A–Like; John Doe Helper; Wear Smith a/k/a Smith Wear; 153–27 Rockaway Beverage, Inc. a/k/a Rockaway Beverage; V & R Beer and Soda Distributors, Inc. a/k/a Ricardo's Wholesale Beer; Burnside Beverage Center, Inc. a/k/a Burnside Distributing; Second Chance Recycling; David Vazquez; John Doe Chops; DRC Group, Inc.; Aleksandr Dolzhanskiy; Aleksandr Rapoport; Beveragetime; William Mathis; Hudson Valley Bus Company, Inc; Robert Deronda; Four Seasons Trucking, Inc.; Your Choice Trucking, Inc.; Your Choice Express, Inc.; Neuman Logistics, Inc.; David Neuman; William Fetzke; Marcia Cohen; John Robuck; Edwin Silva; and E.S. Trucking, Defendants.

No. 99 CIV. 3102(CM).

United States District Court, S.D. New York.

May 18, 2000.

Jay F. Jason, Charlotte G. Swift, Jason & Nesson, Chestnut Ridge, NY, for Plaintiff.

Martin J. Schwartz, Richard G. Primoff, Michele H. Hong, Christopher T. Bavitz, Rubin Baum L.L.P., New York City, for TOMRA Defendants.

Nancy B. Ludmerer, Davis Polk & Wardwell, Malcolm B. Spector, New York, for We Can Defendants.

William J. Dealy, Alan C. Trachtman, Dealy & Trachtman, New York City, for Yonkers DB, Burnside, and Rockaway Defendants.

Richard Ware Levitt, New York, for Defendants Moglia and Kelly's Sober Ride Corp.

Stuart Jay Young, Rego Park, NY, for DRC Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT AND GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

McMAHON, District Judge.

Plaintiff Oak Beverages, Inc. ("Oak") brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and various state law theories, alleging that Defendants engaged in a scheme to fraudulently present Oak with bottles and cans for redemption, despite Defendants' knowledge that those bottles and cans had

already been redeemed. Oak has also brought various pendent state law claims. All Defendants have moved to dismiss under Fed.R.Civ.P. 12(b)(6) and 9(b). For the reasons that follow, their motions are granted.

## FACTS

Oak has brought the instant action against some 40 defendants, including licensed beer dealers, licensed redemption centers, trucking and warehousing companies, and glass brokers, as well as various individuals who are owners, officers or employees of each. In sum, Plaintiff's lengthy (210–page) complaint alleges that the Defendants participated in a scheme whereby several Defendants fraudulently presented already redeemed empty beverage containers to Oak for redemption, and that the remaining Defendants stored or transported those containers in furtherance of the scheme.

### (1) The Parties

#### (a) Oak, TOMRA, and R.T. Trading

Oak, located in Blauvelt, New York, is a distributor of Miller Brands, Amstel, Heineken, and other beers in the greater New York City area.

According to the complaint, Defendant TOMRA of Massachusetts ("TOMRA Mass") is located in Worcester, Massachusetts, and is engaged in the business of collecting redeemable empty beverage containers for dealers, redemption centers and distributors. Defendant TOMRA of North America, Inc. ("TOMRA NA") is based in Stamford, Connecticut, and is the parent corporation of TOMRA Mass. Defendant TOMRA Metro is a Connecticut corporation based in Stratford, Connecticut. TOMRA Mass and TOMRA Metro allegedly share management personnel with TOMRA NA. The individual TOMRA Defendants include Jack Walsh, TOMRA's General Manager, and Mike Wellman, the President of TOMRA Metro.

R.T. Trading is allegedly a New York shell company that has a stated place of business at 837 McLean Avenue in Yonkers, New York. The complaint asserts that R.T. Trading, while holding itself out to the public as a glass brokerage company, is actually a fictitious entity that exists for the sole purpose of concealing the illegal double-redemption scheme. Defendant William Walters is the owner of R.T. Trading.

#### (b) The Redemption Center Defendants

The redemption center Defendants include We Can, Kelly's Sober Ride Corp. ("Kelly's"), Second Chance Recycling ("Second Chance"), DRC Group, Inc. ("DRC"), and a number of officers and employees of each. The complaint alleges that We Can and DRC have presented empty beverage containers to Plaintiff for redemption.

We Can is a New York not-for-profit corporation with a principal place of business at 630 9th Avenue, New York, New York. The complaint states that until June 1998, We Can operated a redemption center at 3875 9th Avenue, and continues to operate a redemption center at 52nd Street and 11th Avenue, New York, New York. Defendant Guy Polhemus is We Can's President.[1]

Kelly's, which is also a licensed malt beverage dealer, is based in the Bronx. The complaint further alleges that Kelly's also maintains a place of business at 837

---

1. Several Defendants named in the complaint were dropped from this action by stipulation and order dated July 29, 1999, including John Demetri, who was a manager of We Can's 9th Avenue redemption center until that site closed in June 1998, and who worked thereafter as a supervisor at DRC's Bronx site. The other Defendants included in the stipulation, who were alleged to have transported and/or stored previously redeemed bottles and cans in furtherance of the scheme, were. Hudson Valley Bus Company, Inc., Robert Deronda, Four Seasons Trucking, Inc., Your Choice Express, Inc., Neuman Logistics, Inc., David Neuman, William Fetzke, Marcia Cohen, and John Robuck.

McLean Avenue in Yonkers, the same address as the allegedly fictitious R.T. Trading. Defendants John Moglia and William Waltenberger are, respectively, the chief operating officer and owner of Kelly's.

Additionally, Defendants John Doe Look–a–Like and John Doe Helper are alleged to have supervised the movement of previously redeemed bottles and cans at Kelly's Bronx location on behalf of Yonkers DB, Kelly's, and other Defendants.

Second Chance also maintains its principal place of business in the Bronx. Defendant David Vazquez is Second Chance's chief operating officer. Vazquez employs Defendant JD Chops, a driver who is alleged to have transported containers in a truck owned by Vazquez.

DRC is located in Brooklyn, and operates a second redemption center in the Bronx. Defendant Aleksandr Dolzhanskiy is the owner or chief operating officer of both DRC sites. Defendant Aleksandr Rapoport is a supervisor of DRC's Bronx site.

### (c) The Beverage Dealer Defendants

The malt beverage dealer Defendants include: 153–27 Rockaway Beverage, Inc. ("Rockaway"), based in Queens, New York; V & R Beer and Soda Distributors, Inc., also known as Ricardo's Wholesale Beer ("Ricardo's"), based in Manhattan; and Burnside Beverage Center, Inc. ("Burnside"), located in the Bronx.

### (2) The Enterprise

Pursuant to New York Environmental Conservation Law § 27–1001 et seq. ("the Bottle Bill") and its implementing regulations, 6 N.Y.C.R.R. § 367.1 et seq., beverage distributors such as Oak are obligated to accept empty bottles and cans and pay a refund of 5 cents and a handling fee of 2 cents on each redeemed container. The regulations further provide that, once the refund value of an empty beverage container has been paid, "no person may knowingly accept that empty beverage container from, or give or sell it to, any person for the purpose of obtaining the refund value from any person." 6 N.Y.C.R.R. § 367.5(a)(4). Oak alleges that Defendants engaged in a scheme to present to Oak for redemption bottles and cans that had already been redeemed in Massachusetts and New York, in violation of the New York Bottle Bill.

According to the complaint, the double-redemption scheme originated with Defendants TOMRA and TOMRA NA, who stored all or some previously redeemed empty beverage containers ("PREBC") at their facility in Worcester, Massachusetts. Instead of returning the empty containers to the manufacturers or canceling their redemption value by crushing them, TOMRA sold the PREBC to one or more of the other Defendants. TOMRA then arranged for the PREBC to be picked up by vehicles owned by the now-dismissed Defendants Hudson, Four Seasons, and Your Choice Express or operated by Defendant JT Beard and others.

The trucking Defendants transported the containers to various "staging points" in New York and New Jersey, including Yonkers DB, Kelly's, and a lot and warehouse in Carlstadt, New Jersey operated by, among others, Defendants NL and Your Choice Express. From these locations, the containers were taken to Burnside, Ricardo's, We Can, and Yonkers DB, each of which then presented the PREBC to Plaintiff for a second, illegal redemption. Additionally, containers were transported from the New York and New Jersey staging points to Kelly's, which in turn shipped the containers to the DRC's Bronx site and Ricardo's, among others, each of which then brought the PREBC to Oak for redemption.

Oak alleges that it spent more than three million dollars between 1997 and 1999 on Defendants' redemption of PREBC.

The complaint goes on to describe a number of overt acts in furtherance of the

conspiracy. In particular, the complaint specifies every occasion, from January 26, 1998 forward, on which previously redeemed containers were moved between or stored by the various Defendants. The complaint also alleges that in December 1997, We Can and Polhemus submitted a baseless complaint to the Office of the New York State Attorney General and other government agencies, in which they falsely accused Oak of violating the Bottle Bill by failing to pick up empty beverage containers on a regular basis from We Can. Oak alleges that We Can's complaint was brought as an attempt to pressure Oak into complying with Defendants' scheme. The complaint states that Oak was ultimately exonerated, but was forced to spend a "great deal" of money and suffered damage to its reputation.

Oak further alleges that on February 11, 1998, the TOMRA Defendants prevented Oak from identifying the source of non-redeemable and previously redeemed containers by informing Oak that TOMRA sent Heineken containers received by them to an overseas location through a business known as R.T. Trading. Plaintiff discovered that the address of R.T. Trading, 837 McLean Avenue in Yonkers, is in fact occupied by a travel agency and stationery store, and is also the given address of Defendants Beveragetime and Smith.

Oak goes on to allege that, on or about February 17, 1998, the TOMRA Defendants fraudulently induced Plaintiff to initiate and engage in a joint investigation with them, for the ostensible purpose of uncovering the source of the PREBC, but with the actual purposes of thwarting Oak's attempts to uncover Defendants' role in the conspiracy and causing additional expense to Oak. Based on unspecified "fraudulent information" that the TOMRA Defendants provided to Oak, Plaintiff initiated a surveillance of trucks entering and leaving TOMRA. On or about February 20, Oak's investigators followed a tractor trailer from Massachusetts to New Jersey. The TOMRA Defendants then contacted Defendant Fetzke, who admitted ownership of the trailer, and who (in an unidentified manner) prevented the investigators' vehicle from leaving a rest area, allowing the trailer to leave the rest area with no further surveillance. Certain unspecified Defendants then complained to the New Jersey State Police about the investigators' surveillance, causing a New Jersey State Police Officer to respond to the rest area and detain the investigators.

Finally, the complaint alleges that all Defendants invested the profits of the scheme by forming Kelly's, which existed solely for the purpose of continuing the enterprise.

### (3) The Present Action

Oak asserts the following federal causes of action, all under RICO: (1) substantive violation of RICO under 18 U.S.C. § 1962(c); (2) investment in a RICO enterprise under § 1962(a); (3) maintenance of an interest in a RICO enterprise under § 1962(b); and (4) RICO conspiracy under § 1962(d). Oak also appends three state law claims for (1) common law unjust enrichment; (2) common law conversion; and (3) common law fraud. All Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). The arguments raised by Defendants are common to all, except where noted. For the reasons that follow, their motions are granted.

Defendants Beveragetime, Craig, Mathis, R.T. Trading, Ricardo's, Waltenberger, Walters, and Wear Smith have not appeared in this action. On December 14, 1999, the TOMRA Defendants, somehow under the misimpression that Oak had moved for entry of default against the non-appearing Defendants pursuant to Fed. R.Civ.P. 55(b), prematurely filed a memorandum in law in opposition to entry of default. Oak has filed no such motion to date.

Additionally, the DRC Defendants have asserted counterclaims against Oak under

state law for malicious prosecution, abuse of process, and attorneys' fees. Oak has moved to dismiss those claims. On July 9, 1999, the DRC Defendants cross-moved for leave to serve an amended answer withdrawing their counterclaims.

## CONCLUSIONS OF LAW

*Standards for Motions to Dismiss under Fed.R.Civ.P. 12(b)(6)*

In reviewing a motion to dismiss, a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citation omitted).

Moreover, the court may only consider facts alleged in the complaint or in documents attached to the complaint or exhibits incorporated therein by reference. *See Black Radio Network, Inc. v. NYNEX Corp.,* 44 F.Supp.2d 565, 573 (S.D.N.Y. 1999). The parties in this case have submitted a number of papers extrinsic to the complaint. In such instance, a district court must either convert the motion to dismiss to a motion for summary judgment or exclude additional submissions from consideration. *See Kreiss v. McCown De Leeuw & Co.,* 37 F.Supp.2d 294, 298 n. 3 (S.D.N.Y.1999) (citing *Fonte v. Bd. of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988)). I decline to convert these motions into a motion for summary judgment, and I therefore will not consider submissions outside the four corners of the complaint.

Finally, because the DRC Defendants have filed an answer in this action, Oak asks that their motion be treated as a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c). Their request is granted. A motion for judgment on the pleadings under Rule 12(c) is governed by

the same standards as a motion to dismiss. *See Irish Lesbian, Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998). Thus, the DRC Defendants' motion will be granted only if it appears beyond a reasonable doubt that Plaintiff can prove no set of facts that would entitle it to relief. *See id.*

I. *First Count: Substantive RICO Claims— § 1962(c)*

To establish a claim for a civil violation of RICO's substantive provision, § 1962(c), a plaintiff must show that he was injured by the defendant's (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 242 (2d Cir.1999) (citation omitted).

(1) *Failure to Allege Cognizable RICO Injury*

Defendants argue first that Oak lacks standing to bring a RICO claim because it has failed to allege that any of Defendants' acts was the proximate cause of its injury. Specifically, Defendants contend that none of Oak's factual allegations against them can be the proximate cause of Oak's injury, because Oak was aware, through its own investigation, of all of the acts alleged in the complaint as they occurred. I agree that Oak has failed to allege that Defendants proximately caused its loss after January 26, 1998, by which point it admittedly knew that the containers presented to it by Defendants had already been redeemed. I also conclude, however, that Oak has sufficiently plead proximate causation for the period up to that date, and so must decline to dismiss the complaint on this ground.

A RICO plaintiff must establish that "the defendant's violations of the RICO statute caused his injuries in order to have standing for a RICO claim." *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 189 (2d Cir.1995). "This requires a showing not only that the defendant's alleged RICO

violation was the 'but-for' cause or the cause-in-fact of his injury, but also that the violation was the legal · or proximate cause." *Id.* (citations omitted). When facts other than the defendant's fraud are an intervening direct cause of the plaintiff's injury, "that same injury cannot be said to have occurred by reason of the defendant's actions." *Id.* "Absent allegations sufficient to establish standing, the Court is without subject matter jurisdiction to entertain a RICO claim." *Moore v. Paine Webber, Inc.,* No. 96 Civ. 6820, 1997 WL 570563, *4 (S.D.N.Y. Sept.12, 1997) (citing *National Weather Serv. v. Brown,* 18 F.3d 986, 988 (2d Cir.1994); *Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576, 585 (S.D.N.Y.1995)).

 Where, as here, RICO predicate acts are based upon fraud, the proximate cause requirement means that a plaintiff must prove both transaction and loss causation. *See First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 769 (2d Cir. 1994) (citations omitted). "Thus, in addition to showing that but for the defendant's misrepresentations the transaction would not have come about, the defendant must also show that the misstatements were the reason the transaction turned out to be a losing one." *Id.* Moreover, "when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." *Id.*

 Finally, where a plaintiff bases RICO liability on predicate acts of mail or wire fraud, "the plaintiff must adequately allege reliance on the defendant's misrepresentations" in order· to. establish proximate cause. *See Lorentzen v. Curtis,* 18 F.Supp.2d 322, 327 · (S.D.N.Y.1998); *Moore,* 1997 WL 570563, at *4 (citing *Metromedia Co. v. Fugazy,* 983 F.2d 350, 368 (2d Cir.1992)).

Other courts within this circuit have had occasion to consider the RICO proximate cause requirement under circumstances analogous to those before me. *Lorentzen, supra,* arose from a legal malpractice claim. The defendant· in *Lorentzen,* Curtis, was an attorney who had represented the plaintiff in a prior legal malpractice action. Curtis brought a third-party RICO action against the malpractice insurer of the defendant in the prior action, alleging that the insurer had made a number of fraudulent misrepresentations as to the strength of its legal position, by: creating false evidence that an affidavit was not received when it was due; writing a letter that stated falsely that the plaintiff had not provided a response to defendant's discovery requests or produced certain documents that had been requested; a letter accusing Curtis of, *inter alia,* misstatements and coercive tactics; and a letter falsely stating that no discussion had occurred identifying the case's settlement value. In dismissing the case under Fed. R.Civ.P. 12(b)(6), Judge Parker observed that none of these acts could have proximately caused Curtis' RICO damages, because "he would have known upon receiving these letters that they were false." *Id.* at 329.

 Similarly, in *Cathay Pacific Airways, Ltd. v. Fly and See Travel, Inc.,* 3 F.Supp.2d 443 (S.D.N.Y.1998), plaintiffs, three airlines, brought a RICO action against a travel agency for engaging in the practice of "cross-bordering," whereby the travel agency issued tickets with false points of origin in order to lower the fare paid by the passenger to the airline. The airlines continued to approve refunds to the travel agency even after becoming aware of the cross-bordering scheme. Following the liability phase of a bifurcated bench trial, the Court, in assessing damages, entered judgment for the defendant, on the ground that the airlines had failed to demonstrate that the cross-bordering was the proximate cause of their damages. *See id.* at 451–52. In reaching this determination, Judge Sprizzo noted that the plaintiffs were under no legal obligation to issue the refunds. Thus, "it

was plaintiffs' decision to voluntarily pay the lifting carriers, rather than the defendants' fraud, that was the proximate cause of their injuries." *Id* at 451.[2]

In this case, I cannot dismiss the complaint on the ground that Oak has failed to allege loss causation, although I can certainly cut off the claim period at January 26, 1998, by which time Oak became aware, through its investigation, that the containers presented to it for redemption had already been redeemed. (Cplt.¶ 72.) Oak acknowledges, in paragraph 68 of the complaint, that it "has observed the following specific overt acts by the defendants"—those overt acts being all of the factual allegations in the complaint from January 26, 1998. Thus, Oak's decision to accept containers from Defendants after that date, despite its admitted knowledge of each and every act constituting the scheme from January 26, 1998 onwards, is a superseding cause that precludes it from establishing loss causation subsequent to that date. However, it is possible that Oak could prove loss causation prior to its discovery that it was redeeming PREBC— a period that, according to the complaint, began in or about 1997, and that logic dictates must have ended no later than late January 1998.

Oak disputes Defendants' contention that its conscious choice to continue redeeming PREBC when it knew they were being presented for double redemption defeats the element of loss causation. First, it attempts to distinguish the present case from *Cathay Pacific* by asserting that it is impossible to differentiate between empty bottles and cans that have been redeemed and those that have not upon visual inspection. Thus, Oak claims that it had no way of knowing which containers it was obligated to redeem, and for that reason, was not on notice of the fraud. Oak argues that, by contrast, the plaintiffs in *Cathay Pacific* could determine which tickets were fraudulent by simply looking at them.

Oak's account of the facts in *Cathay Pacific*, however, is not entirely accurate. Although the *Cathay Pacific* Court noted that the tickets issued for one of the plaintiff-airlines lacked the standard gum labeling normally used to determine pricing for a given ticket, and that there were noticeable discrepancies between flight and audit coupons, Judge Sprizzo nonetheless concluded that cross-bordering was not apparent on the face of the tickets as issued. *See Cathay Pacific*, 3 F.Supp.2d at 452.

Moreover, *Cathay Pacific* does not support the proposition that the inability to distinguish each specific instrument of a fraud will allow a RICO plaintiff to establish proximate cause even if the plaintiff is aware of the means of that fraud and is in a position to prevent it. To the contrary, *Cathay Pacific* makes clear that where a plaintiff has knowledge of racketeering activity directed against it, and elects not to take action to prevent that activity, the plaintiff's inaction, rather than the illegal conduct, is the cause of its injury, and the plaintiff lacks standing to bring a RICO claim.

Furthermore, as the We Can Defendants point out, though Oak asserts that the redeemable and non-redeemable containers were visually indistinguishable, Oak also alleges to the contrary that all of the payments it made to We Can during the time period specified in the complaint were for "previously redeemed or non-redeemable bottles." (Cplt.¶¶ 1491, 1515–

---

**2.** As Oak correctly points out, the *Cathay Pacific* Court reached its decision on proximate cause only after having found that the defendant was liable under RICO. It is unclear from the opinion how that Court came to conclude that RICO liability was established even though the plaintiffs failed to prove an essential element of their cause of action, i.e., proximate cause. Nevertheless, I agree with Judge Sprizzo's determination on the proximate cause question, and though *Cathay Pacific* was addressed to the issue of damages, rather than liability, I find its reasoning to be apposite to the issue before me, namely, whether Plaintiff has made sufficient allegations of proximate cause to state a claim under RICO.

17, 1519.) Plaintiff's speaking out of both sides of its mouth on this issue undermines its claim that it was unable to identify previously redeemed containers.

Oak next argues that it took steps, albeit unsuccessfully, to prevent the fraudulent redemption of containers, pointing to the following allegations in its complaint: (1) Oak refused to pick up containers from Kelly's and DRC, and notified the New York State Department of Environmental Conservation of those Defendants' participation in the scheme; (2) Oak asked Yonkers DB to cease presenting containers for redemption at Oak's crushing site, but rather, to redeem them at Oak's facility in Blauvelt, New York, so that the number of containers redeemed by Yonkers DB would not exceed the number of full containers purchased by Yonkers DB; (3) Oak participated in a series of meetings in which it revealed to the TOMRA Defendants that Oak was the victim of an illegal redemption scheme involving TOMRA's release of previously redeemed containers to R.T. Trading; and (4) Oak refused to pick up containers from We Can's lot on 207th Street after that lot closed in September 1998. These measures were ineffectual, Oak claims, because Defendants simply altered their scheme by re-routing the containers to other dealers and redemption centers, so that Oak was unable to determine which containers had originated at TOMRA and had been transported to R.T. Trading.

None of these allegations changes the fact that Oak's knowledge was a superseding cause of its RICO injury after January 26, 1998. Whether or not containers were being routed directly to Oak via R.T. Trading or indirectly through the Defendant beverage dealers and redemption centers, Oak was concededly aware that the shipments of containers from each of those Defendants contained previously redeemed bottles and cans.

Moreover, with respect to Oak's communications with TOMRA, the complaint contains no allegations that Oak informed the TOMRA Defendants that the bottles sold by TOMRA to R.T. Trading were being presented to Oak for double-redemption. Though the complaint describes meetings with TOMRA employees concerning the existence of a fraudulent scheme, Oak does not dispute that it never revealed to TOMRA the evidence of TOMRA's role in the scheme that Oak acquired during its investigation.

As Defendants observe, Oak had a number of options once it became aware of the scheme for routing the containers: (1) petition the DEC for declaratory relief and imposition of penalties pursuant to § 27–1015 of the Bottle Bill and 6 N.Y.C.R.R. § 367.15; (2) bring a private action under state law to enjoin Defendants' activity; or (3) disclose to TOMRA the evidence gathered through Oak's surveillance.

Oak responds that it decided not to seek injunctive relief from the DEC because the DEC had been engaging in its own investigation of Defendants' scheme, with Oak's cooperation, and consequently, the New York State Attorney General's Office asked Oak to maintain the confidentiality of that investigation by continuing to redeem previously redeemed cans. Oak states that its decision to refrain from legal action was based on its desire to cooperate in good faith with the state authorities.

None of the facts on which Oak relies appears in the complaint, but only in the Affidavit of Gerald Scapperotti attached to Oak's opposition papers. Therefore, as discussed above, they cannot be relied upon on a motion to dismiss. But even if these facts had been pleaded (or if Oak had been granted leave to assert them, see below at slip op. p. 18), they would not alter my conclusion. I do not accept that Oak's strategic decision not to take preventative action in deference to the DEC somehow restored the causal link between the double-redemption scheme and Oak's losses. Though it may have risked the displeasure of the agency investigating the scheme, Oak remained free to bring a legal proceeding before incurring the losses it

now seeks to recover. Alternatively, as the TOMRA Defendants note, Oak could have obviated the need to publicly disclose the scheme by bringing its evidence to TOMRA. Its failure to do either precludes it from seeking damages in this action. *See Waste Conversion, Inc. v. Rollins Environmental Servs. (NJ), Inc.,* Civ. A. No. 88–7792, 1989 WL 79768, *8 (E.D.Pa. Jul.7, 1989) (noting applicability of avoidable consequences doctrine in RICO context).

Finally, Oak argues that, unlike the plaintiffs in *Cathay Pacific,* it was under a statutory duty "to accept and pay for all legally redeemable bottles presented for redemption." Thus, Oak asserts, Defendants placed it in a "Catch–22" situation, with Oak faced with the equally unpalatable alternatives of allowing itself to be defrauded or subjecting itself to liability for refusing to accept previously redeemed containers. I reject this argument. Oak's Catch–22 scenario rests upon the false premise that Oak had no other options. For the reasons discussed above, this was not the case: Oak could have availed itself of legal action against Defendants, and, thereby obtained legal imprimatur for its refusal to redeem containers from Defendants, or, Oak could have disclosed its evidence to the TOMRA Defendants. It did neither of these. Oak thereby occasioned its own loss after January 26, 1998.

However, the failure to allege proximate cause after that date cannot serve as a ground for dismissing the complaint. Oak does not allege that the movement of PREBC from January 26, 1998 on is the only factual basis for its complaint, or that it only suffered damages after that point. Rather, the allegations in the complaint can be read to assert that the illegal redemption of PREBC had been occurring prior to January 26, 1998, and that Oak only became aware of the scheme at the inception of its investigation. I therefore conclude that Oak has adequately alleged loss causation under RICO for the period up to January 26, 1998. For that reason, Defendants' motions to dismiss on the ground of failure to allege proximate cause is denied.

(2) *Failure to Allege a Pattern of Racketeering Activity*

The fact that some portion of Oak's substantive RICO claims survives the loss causation challenge does not mean that this case should go forward. Defendants mount several other challenges to this cause of action, one of which is clearly meritorious.

■ To plead a pattern of racketeering activity adequately, a plaintiff must allege (1) at least two predicate acts of racketeering occurring within a ten-year period; (2) that the predicate acts are related to each other; and (3) that the predicate acts amount to or pose a threat of continuing criminal activity. *See Price v. Gast,* No. 98 Civ. 7769, 2000 WL 369381, *6 (S.D.N.Y. Apr.11, 2000) (citations omitted). Defendants argue that Oak's complaint fails to allege the third of these requirements—i.e., that Oak has failed to allege that the predicate acts occurred with sufficient continuity to constitute a RICO pattern.

■ A plaintiff may satisfy the continuity requirement by alleging either a closed-ended pattern, that is, past criminal conduct extending over a substantial period of time, or, an open-ended pattern, i.e., past criminal conduct coupled with a threat of future criminal conduct. *See id.* at *8.

(a) *Closed–Ended Continuity*

■ Closed-ended continuity is demonstrated by predicate acts that "amount to continued criminal activity" by a particular defendant. *See H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). This definition is satisfied by a showing of "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months do not satisfy this requirement." *Id.* at 242, 109 S.Ct. 2893.

Since the Supreme Court decided *H.J.*, the Second Circuit has never held a period of less than two years to constitute a "substantial period of time" for purposes of closed-end continuity. *See Cofacredit*, 187 F.3d at 242. As the Second Circuit has noted, "Though an approach giving such weight to the duration of criminal activities alleged in connection with a closed-ended pattern of racketeering activity is undoubtedly somewhat mechanistic, we believe that it is required to effectuate Congress's intent to target 'long-term criminal conduct.'" *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 468 (2d Cir.1995) (quoting *H.J.*, 492 U.S. at 242, 109 S.Ct. 2893). However, "[a]lthough closed-ended continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *Cofacredit*, 187 F.3d at 242.

Here, the predicate acts alleged by Oak extend over the span of roughly 14 months, from January 1998 to March 1999, and consist of mail and wire fraud, as well as a number of federal and state statutes, nearly all of which are inapplicable to Oak's allegations. Moreover, almost all of those predicate acts fall after the date on which Oak's own knowledge defeats loss causation and precludes recovery, making the predicate act period even shorter.

Specifically, Oak alleges 64 counts of mail fraud between January 23 and December 9, 1998, in which Oak sent checks for PREBC to Defendants Yonkers DB, We Can, Second Chance, DRC, and Dolzhanskiy, at the request of those Defendants.

With regard to wire fraud, the complaint states that on February 11, 1998, TOMRA Mass received a fax from R.T. Trading, in which R.T. Trading certified that it was disposing of previously redeemed containers in a legal manner. Oak has not alleged that any of the TOMRA Defendants caused R.T. Trading to send that fax, and the mere receipt of a fax by TOMRA Mass does not constitute wire fraud under the statute. *See* 18 U.S.C. § 1343. The complaint then alleges that on March 3, 1999, over one year later, Kim Murray of TOMRA Mass sent Gerald Scapperotti of Oak a fax stating that TOMRA was legally disposing of containers through R.T. Trading. Oak further alleges that on two occasions, January 9 and 13, 1998, We Can sent faxes to Oak claiming that Oak owed We Can a balance for previously redeemed bottles and cans. The complaint further states that upon receipt of We Can's two faxes, Oak faxed responses (the contents of which are not identified) to Charles Chae of We Can, but nothing in the complaint suggests that Oak's reply faxes served to further the scheme, and therefore, those faxes do not amount to predicate acts. Finally, the complaint alleges that DRC also sent a fax to Oak demanding payment for previously redeemed bottles and cans. In sum, Oak has alleged four counts of wire fraud.

Oak also alleges that the Defendants violated a number of New York State statutes, including: the New York State Bottle Bill Regulations, 6 N.Y.C.R.R. § 367.5(a)(4); New York Penal Law, Racketeering Activity, § 460.00 *et seq.*; New York Penal Law, Attempt to Commit Each of the Substantive Offenses, Article 110; New York Penal Law, Criminal Facilitation, Article 115; New York Penal Law, Coercion, §§ 135.60 and 135.65; New York Penal Law, Criminal Solicitation, Article 100; New York Penal Law, Conspiracy, Article 105; New York Penal Law, Larceny, Article 155; and New York Penal Law, Scheme to Defraud, §§ 190.60 and 190.65.

Section (1)(A) of RICO, however, provides that for a violation of state law to serve as the basis for "racketeering activity," the violation must involve an act or threat of murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical. None of the

state law provisions invoked by Oak is of that ilk.

Finally, Oak alleges violations of several federal criminal statutes, including: the federal continuing financial crimes enterprise statute, 18 U.S.C. § 225; the federal anti-Klan conspiracy statute, 18 U.S.C. § 241; the federal stolen property statutes, 18 U.S.C. §§ 2314, 2315; the federal interference with interstate commerce statute, 18 U.S.C. § 1951; the federal racketeering in interstate commerce statute, 18 U.S.C. § 1952; the federal embezzlement and theft in interstate commerce statute, 18 U.S.C. § 659; and the federal money laundering and money transactions with respect to illegally derived property statutes, 18 U.S.C. §§ 1956, 1957. With the exception of the stolen property statutes, Oak does not dispute Defendants' argument that none of these provisions is relevant to this case. Because, as discussed below, Oak has failed to allege a RICO pattern, I need not reach the question of whether the stolen property statute applies to this case.

Oak's allegations are insufficient for closed-ended continuity. Although Oak alleges that the scheme began in 1997 or thereabouts, the earliest predicate act alleged occurred on January 9, 1998, when We Can sent a fax to Oak asserting that Oak owed We Can a sum of money for PREBC. (Cplt. ¶ 1525.) Apart from the brevity of the enterprise, Oak has alleged none of the other countervailing factors that might point to closed-ended continuity; Oak alleges the existence of only one scheme, Oak was the only victim of that scheme, and the scheme was devised for only one purpose. For these reasons, I conclude that Oak has failed to sufficiently allege closed-ended continuity. *See, e.g., Schnell v. Conseco, Inc.*, 43 F.Supp.2d 438 (S.D.N.Y.1999) (allegations of predicate acts over period of 23 months consisting entirely of mail and wire fraud and directed toward a single goal not sufficient for closed-ended continuity).

### (b) Open–Ended Continuity

To demonstrate open-ended continuity, a plaintiff need not show that the predicates extended over a substantial period of time, but must show "that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit*, 187 F.3d at 242 (citation omitted). The determinative factors in the open-ended continuity analysis are the nature of the RICO enterprise and the predicate acts. *Id.* (citation omitted). Specifically, "[w]here the enterprise is engaged primarily in racketeering activity, and the predicate acts are inherently unlawful, there is a threat of continued criminal activity, and thus open-ended continuity." *Id.* (citing *H.J., Inc.*, 492 U.S. at 242–43, 109 S.Ct. 2893). Where, however, the enterprise conducts primarily a legitimate business, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id.*

Oak argues only that the latter situation is present in this case—i.e., that the nature of the predicate acts perpetrated by Defendants carries a threat that the container-redemption scheme will continue indefinitely into the future. For the very reasons discussed in connection with Oak's failure to allege proximate cause, however, I find that no such threat exists on the facts alleged. Oak is admittedly aware of the scheme, and is in a position to prevent further illegal redemption. Indeed, it appears from the complaint that Oak has done so by terminating its dealings with several of the Defendants: Oak does not allege any business with We Can after We Can closed its upper Manhattan redemption center in June 1998, and the complaint alleges no movements of bottles or cans from TOMRA's facility during the three months prior to the filing of the complaint.

In this respect, the case Oak relies upon, *Beauford v. Helmsley*, 865 F.2d 1386 (2d

Cir.) (en banc), *vacated and remanded,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *original decision adhered to,* 893 F.2d 1433, *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989), is readily distinguishable. In that case, the plaintiff's RICO complaint alleged that the defendants, partners in a real estate business sponsoring the conversion of an apartment complex into condominiums, the business's sales agent, an engineering firm and an individual engineer made a number of material misrepresentations to current or potential tenants as to the condition of the complex. The Second Circuit reversed dismissal of the case, concluding that the plaintiff had adequately plead open-ended continuity, on the ground that the predicate acts alleged—roughly 8,000 fraudulent mailings to tenants of the complex or individuals potentially interested in purchasing the apartments—were likely to continue, because many of the apartments remained unsold. *See id.* at 1392.

In the present case, Oak, unlike the victims of the mail fraud scheme in *Beauford,* is aware not only of the existence of the scheme, but the manner in which it was carried out. It is also the sole victim of the alleged enterprise. The prospect of ongoing racketeering activity is therefore not present. Oak may not argue that open-ended continuity exists because it has decided to allow the scheme to continue.

For the above reasons, I conclude that Oak has failed to allege a pattern of RICO activity. Oak's substantive RICO claims under § 1962(c) are therefore dismissed.

### (3) *Remaining Arguments—Fraud and RICO Enterprise Allegations*

The Defendants further argue that Oak has failed to allege (1) the predicate acts of mail and wire fraud with requisite particularity under Fed.R.Civ.P. 9(b), and (2) the existence of a RICO enterprise.

Defendants' Rule 9(b) argument appears to have some merit with respect to certain Defendants, insofar as Oak has made no allegations of mail or wire fraud by TOMRA NA, TOMRA Metro, Wellman, Walsh,

Kelly's, Moglia, McDine, Murillio, Burnside, Rockaway, Polhemus, and Rapoport, apart from vague assertions that each Defendant "utilized the U.S. Postal Service" (Cplt.¶¶ 1449, 1451) and "utilized interstate . . . telephone communications" (id.¶¶ 1520, 1522) in furtherance of the scheme. Because I am dismissing Oak's RICO claims on the basis of Oak's failure to allege a pattern, however, I need not reach either of these arguments.

### II. *Second and Third Counts: Investment/Interest in RICO Enterprise— § 1962(a) and (b)*

Oak has also brought claims against all Defendants under § 1962(a) and (b).

Section 1962(a) prohibits

> any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Subsection (b) provides in pertinent part:

> It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

As discussed above, Oak has failed to properly allege a pattern of racketeering activity, as is required under both §§ 1962(a) and (b). Its claims under those subsections therefore fall away and are dismissed.

Moreover, subsection (a) requires a plaintiff to demonstrate that its injury was caused by the defendant's investment of the racketeering proceeds, *see Ouaknine v. MacFarlane,* 897 F.2d 75, 82–83 (2d

Cir.1990), while subsection (b) requires a showing that the damages are caused by acquisition or maintenance of control of the RICO enterprise. *See Black Radio*, 44 F.Supp.2d at 579 (citation omitted). Here, Oak alleges that the formation of Kelly's constituted an investment of racketeering proceeds and acquisition and/or maintenance of an interest in the enterprise within the meaning of these subsections. Since Kelly's was formed after Oak's investigation began, however, Oak's damages were occasioned by its decision not to act against the scheme. Thus, Oak satisfies neither subsection's loss causation requirement.

Alternatively, with respect to subsection (b), Oak argues that the initiation of the scheme itself amounts to an acquisition or maintenance of control of the enterprise. Under subsection (b), however, a plaintiff must allege an injury resulting from such control of the enterprise—i.e., "acquisition injury"—that is distinct from injury caused by commission of the predicate acts. *See Black Radio*, 44 F.Supp.2d at 579 (citation omitted). Oak has alleged no injury other than that caused by the predicate acts.

For these reasons, Oak's second and third claims for relief are dismissed.

### III. *Fourth Count: RICO Conspiracy— 1962(d)*

█ Section 1962(d) provides that it is unlawful "for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." Because Oak has failed to state a claim for violation of § 1962(a), (b), or (c), its RICO conspiracy claim must also fail. *See Black Radio*, 44 F.Supp.2d at 581 (citations omitted); *Cedric Kushner Promotions, Ltd. v. King*, No. 98 Civ. 6859, 1999 WL 771366, *4 (S.D.N.Y. Sept. 28, 1999).

█ Moreover, even if Oak had adequately alleged a violation of subsection (a), (b), or (c), its conspiracy claim would not survive the present motion. With respect to conspiracy, Oak alleges only that "[t]he defendants, and each of them, have conspired together to violate the provisions of 18 U.S.C. § 1962(a-c)." (Cplt. ¶ 1556(d).) "Bare allegations of 'conspiracy' ... are insufficient to support a civil RICO claim." *Morin v. Trupin*, 747 F.Supp. 1051, 1067 (S.D.N.Y.1990) (quoting *Grunwald v. Bornfreund*, 668 F.Supp. 128, 133 (E.D.N.Y.1987)). Under this standard, Oak's barebones allegation is insufficient to state a claim for RICO conspiracy. *See Hecht*, 897 F.3d at 25 (allegation that defendants were "conspiring with agents, servants, and employees and others to conduct their affairs through a pattern of racketeering activity" and "conspiring to violate provisions of [section] 1962(a), [ ](b), and (c)" inadequate to survive motion to dismiss); *Morin*, 747 F.Supp. at 1067 (allegation that defendants "conspired with each other to violate 18 U.S.C. Sec. 1962(a), (b) and (c) insufficient to state RICO conspiracy claim"). Accordingly, Oak's RICO conspiracy claim is dismissed.

### IV. *Res Judicata as to DRC, Dolzhanskiy and Rapoport*

█ This case is not the first between Defendant DRC and Oak involving DRC's alleged redemption to Oak of previously redeemed bottles and cans. DRC filed suit against Oak in New York State Supreme Court, Queens County, after Oak refused to pick up containers from DRC based on Oak's allegation that DRC was presenting it with already-redeemed bottles and cans. That action resulted in a Stipulation of Settlement entered into on May 4, 1999 before Justice Joan Marie Durante.

The Stipulation, which by its terms was entered into "for the purpose of resolving the matter without the need for continued litigation," provided, *inter alia*, that (1) DRC would fax Oak advance information about the number of bottles to be re-

deemed, along with evidence of the source of those bottles, (2) Oak reserved the right to inspect and refuse redemption of bottles in the event Oak determines that a party redeeming bottles through DRC is double-redeeming; (3) Oak was to furnish DRC with samples of certain label symbols that would allow Oak to determine which bottles came from out of state; (4) in the event of a determination by Oak that DRC was double-redeeming, Oak would be entitled to a credit equal to the dollar value of two times the number of cartons of empties per pallet of containers multiplied by the number of pallets picked up by Oak since the last inspection; and (5) nothing in the Stipulation was to be construed to imply that DRC was knowingly engaged in a practice of illegal double redemption. (Transcript of Stipulation before Justice Joan Durante, attached as Exhibit 19 to Affirmation of Charlotte G. Swift, Esq.) DRC argues that the settlement is res judicata as to it, Dolzhanskiy and Rapoport. Oak has neglected to address this argument in its memorandum of law.

Res judicata "makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, [that] were or should have been adjudicated in the proceeding." 1B James Wm. Moore, *Moore's Federal Practice* ¶ 0.405[1], at III–7 (2d ed.1996). A federal court is bound to give the same preclusive effect to a state court decision that a state court would give it. *See Tonken v. Loving & Weintraub, Inc.,* 22 F.Supp.2d 86, 90 (S.D.N.Y.1998) (citing *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Under New York law, a voluntary discontinuance with prejudice, such as the settlement in this case, constitutes a final judgment on the merits for purposes of res judicata. *See Moore v. County of Clinton,* 219 A.D.2d 131, 640 N.Y.S.2d 927, 929 (N.Y.A.D.1996); Siegel, Practice Commentaries, McKinney's Cons.Laws of New York, Book 7B, CPLR § 3217:13, at 734.

The DRC Defendants argue that, because Oak failed to bring a counterclaim against DRC in the state action for DRC's

alleged double-redemption of bottles and cans, it is barred under res judicata from doing so in this action. New York, unlike the federal system, has no compulsory counterclaim rule. *See* N.Y. C.P.L.R. § 3019(a); *Eubanks v. Liberty Mortgage Banking Ltd.,* 976 F.Supp. 171, 173 (E.D.N.Y.1997). Thus, under New York law, res judicata will not necessarily bar claims that could have been brought as counterclaims in a prior action. *See Henry Modell and Co. v. Minister, Elders and Deacons of the Reformed Protestant Dutch Church,* 68 N.Y.2d 456, 462 n. 2, 510 N.Y.S.2d 63, 502 N.E.2d 978 (N.Y.1986). But res judicata will bar a second action by a defendant "who is silent in the first action and then tries to bring a second action that would undermine 'the rights or interests established in the first action.'" *Id.* at 461, 510 N.Y.S.2d 63, 502 N.E.2d 978 (citation omitted).

Here, Oak's claims against the DRC Defendants would undermine the rights established by the Stipulation. Specifically, Oak seeks a determination by this Court that the DRC Defendants were participants in a scheme to redeem bottles from out of state during the same time period as in the state court action. Such a finding would clearly contravene the terms of the Stipulation of May 4, 1999, which precludes liability on the part of DRC for redemption of previously redeemed bottles and cans. Moreover, the Stipulation does not appear to contain any reservation of either party's right to sue, and Oak has not brought any such provision to the Court's attention. Thus, Oak's election to settle rather than assert a counterclaim for DRC's alleged double-redemption precludes it from bringing that claim in this court. Oak's claims against DRC, Dolzhanskiy, and Rapoport are therefore barred on the ground of res judicata.

## V. *State Law Claims*

Oak has also brought state law claims for unjust enrichment, conversion, and fraud. In addition, the DRC Defendants

have asserted counterclaims, also under state law, for malicious prosecution, abuse of process, and attorneys' fees.

I decline to exercise pendent jurisdiction over these claims. Accordingly, they are dismissed.

## VI. *Leave to Amend*

Oak seeks leave to amend its complaint under Fed.R.Civ.P. 15(e). Leave to amend "shall be freely granted when justice so requires, and as general matter amendments are favored 'to facilitate a proper decision on the merits.'" *Black Radio*, 44 F.Supp.2d at 573 (citations omitted). The decision to grant leave to amend, however, falls within the sound discretion of the district court. *See id.* (citations omitted). A district court may deny leave where "the claims would fail to state a claim upon which relief can be granted." *Id.* (citations omitted).

In this case, amendment would not allow Oak to state a viable RICO claim. No amendment could cure the defect in continuity, since Oak cannot establish loss causation from and after early 1998, and there is no continuing injury caused by the predicate acts alleged. Thus, amendment of Oak's complaint would be futile. Leave to amend is therefore denied.

## *Conclusion*

Oak's RICO and state claims are dismissed. The DRC Defendants' counterclaims, all of which are brought under state law, are also dismissed.

This constitutes the order and decision of the Court.